UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ATLANTIC CASUALTY INSURANCE
COMPANY,

                Plaintiff,

         - against –

BAYPORT CONSTRUCTION CORPORATION,
LAM GROUP and LAM PEARL STREET HOTEL
LLC,

                Defendants.

CIVIL ACTION NO.

**DECLARATORY JUDGMENT COMPLAINT**

ECF CASE

---

Atlantic Casualty Insurance Company ("Atlantic Casualty"), by and through its attorneys, Marshall Conway Bradley & Gollub, P.C., as and for its declaratory judgment complaint against BAYPORT CONSTRUCTION CORPORTION ("Bayport"), LAM GROUP and LAM PEARL STREET HOTEL LLC ("LAM Hotel") alleges, upon knowledge with respect to itself and its own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 concerning Atlantic Casualty's rights and obligations under an insurance policy issued by Atlantic Casualty to Bayport relating to an action captioned: *Lam Group and Lam Pearl Street Hotel LLC v. Anthony T. Rinaldi LLC D/B/A The Rinaldi Group et al.*, Index No. 650465/2022, filed in New York Supreme Court, New York County ("Underlying Action").

2. On or around January 31, 2022, LAM Group and LAM Hotel (collectively, referred to as "LAM") filed the Verified Complaint ("Underlying Complaint") in the Underlying Action

1

against Anthony T. Rinaldi LLC d/b/a The Rinaldi Group ("Rinaldi"), Bayport, Nobutaka Ashihara Architect P.C., Gene Kaufman Architect P.C. and Frank Seta & Associates LLC ("FSA").

3. The Underlying Complaint alleges that: (i) Bayport, a subcontractor, performed mason and stucco work in connection with the construction of a building ("Building") located at 215 Pearl Street, New York, New York; (ii) on December 25, 2020, after the Building was constructed, pieces from the stucco exterior of the Building dislodged causing property damage.

4. Atlantic Casualty has assigned counsel to defend Bayport in the Underlying Action under a Partial Disclaimer of Coverage and is providing a defense to Bayport.

5. Atlantic Casualty has commenced this lawsuit in order to obtain a declaration that Atlantic Casualty Policy Number L03009259-2 (the "Atlantic Casualty Policy") issued to Bayport does not provide coverage for the Underlying Action and Atlantic Casualty has no duty to defend or indemnify Bayport in the Underlying Action.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because this action arises between citizens of different states and meets the jurisdictional requirement for the amount in controversy.

7. The amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue in this District is proper under 28 U.S.C. § 1391(b)(1) because LAM Group and LAM Hotel reside in this District and Bayport resides in New York.

## PARTIES

9. Plaintiff Atlantic Casualty is a corporation authorized and existing under the laws of

2

North Carolina with its principal place of business in North Carolina.

10. At all relevant times, Bayport was and is a New York corporation with its principal place of business located at 206 Railroad Street, Bayport, New York 11705.

11. At all relevant times, Bayport was and is a New York corporation with its principal place of business at 1286 Prospect Place, Brooklyn, NY 11213.

12. At all relevant times, LAM Group is a corporation authorized and existing under the laws of New York with its principal place of business at 202 Centre Street, 6th Floor, New York, New York 10013.

13. At all relevant times, LAM Hotel is a corporation authorized and existing under the laws of New York with its principal place of business at 202 Centre Street, 6th Floor, New York, New York 10013

## FACTUAL BACKGROUND

### The Atlantic Casualty Policy

14. Atlantic Casualty issued the Atlantic Casualty Policy to Bayport for the policy period of July 25, 2020 to July 25, 2021. Annexed hereto as Exhibit No. 1 is redacted copy of the Atlantic Casualty Policy. The Atlantic Casualty Policy has a $1 million Each Occurrence Limit/$2 million General Aggregate Limit subject to a $500 Per Claim deductible for bodily injury and/or property damage liability combined.

15. The insuring agreement of the Atlantic Casualty Policy, as modified by the Insuring Agreement Amendment – Use of Extrinsic Evidence – Right to Defend endorsement, states, in pertinent part, as follows:

3

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "property" to which this insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking covered damages. We will have the right, but not the duty, to defend any insured against any "suit" for which we dispute coverage. We will have no duty to defend or indemnify any insured against any "suit" seeking damages for ..."property damage" where there is no coverage under the policy. We will have the right, but not the duty, to defend those qualifying as an additional insured by way of an additional insured endorsement.

    We may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against a lawsuit seeking ... "property damage" provided that extrinsic evidence does not contradict a claimant's pleaded allegation. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit that may result. But:

    (1) The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

    (2) Our right and duty to defend a claim to which this insurance applies ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A or B** or medical expenses under **Coverage C**.

    \* \* \*

    b. *This insurance applies to ... "property damage" only if:*

    (1) *The ... "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

    (2) *The ... "property damage" occurs during the policy period*
       ...

(emphasis added).

4

16. The Atlantic Casualty Policy, as modified by the Amended Definition – Property Damage endorsement, contains the following definitions:

> **8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
>> **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>>
>> **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
>> **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or
>>
>> **b.** Your fulfilling the terms of the contract or agreement.
>
> **9.** "Insured contract" means:
>
> * * *
>
>> **f.** That part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for ... "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
>
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> **16.** "Products-completed operations hazard":
>
>> **a.** Includes all "bodily injury" and "property damage" occurring away from the premises you own or rent and arising out of "your product" or "your work" except:
>>
>>> **(1)** Products that are still in your physical possession; or

5

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

     (a) When all of the work called for in your contract has been completed.

     (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

     (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. *All such loss of use shall be deemed to occur at the time of the physical injury that caused it*; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

However, "property damage" does not include breach of contract, breach of any express or implied warranty, deceptive trade practices or violation of any consumer protection laws.

"Property damage" does not include any cost or expense to repair, replace or complete any work to any property that you, or any insured, are otherwise obligated to repair, replace or complete pursuant to the terms of any contract.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic date means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or

6

    floppy discs, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

21. "Your product":

   a. Means:

   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       (a) You;

       (b) Others trading under your name; or

       (c) A person or organization whose business or assets you have acquired; and

   (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   a. Means:

   (1) Work or operations performed by you or on your behalf; and
   (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   (2) The providing of or failure to provide warnings or instructions.

7

(emphasis added).

## The Underlying Complaint

17. The Underlying Complaint alleges that: (i) the Building is "a 38-story concrete frame commercial building"; (ii) "[t]he façade on the North and East sides of the Subject Building is comprised of aluminum and glass curtain walls from the 1st floor to the 5th floor, and brick masonry and aluminum panels"; (iii) "[t]he façade on the South and West sides of the Subject Building is clad with stucco on metal lathe"; (iv) "[t]he Subject Building was constructed in 2018 and completed in October 2020"; (iv) "LAM retained Defendant Rinaldi to serve as the general contractor" for the construction of the Building; (v) "Bayport served as a subcontractor who performed the masonry and stucco work on the Subject Building"; (vi) "Bayport installed the Commercial Cement Plaster 3™ manufactured by Dryvit Systems, Inc. ('Stucco System') at the Subject Building"; (vii) "[t]he New York City Department of Buildings ... issued violations to LAM"; (viii) "Dryvit determined that the cause of damage was poor workmanship, not faulty product"; and (ix) "it was determined that the entire stucco facade [of the Building had to] be removed and replaced." *See* Underlying Complaint ¶¶ 16, 19, 20, 36, 66, 72, 73, 76, 87. Annexed hereto as Exhibit 2 is a true and accurate copy of the Underlying Complaint.

18. The Underlying Complaint contains causes of action against Bayport for breach of contract (second cause of action), negligence (seventh cause of action), breach of warranty (sixteenth cause of action) and breach of the implied warranty of good workmanship (eighteenth cause of action).

8

**Pertinent Correspondence**

19. On or around December 5, 2022, Atlantic Casualty received first notice of the "occurrence", claim and suit. Annexed hereto as Exhibit No. 3 is a true and correct copy of the email dated December 15, 2022 enclosing the ACORD Liability Notice of Occurrence/Claim.

20. On April 6, 2023, Atlantic Casualty issued a partial disclaimer letter ("Partial Disclaimer Letter") but agreed to defend Bayport in the Underlying Action. Annexed hereto as Exhibit No. 4 is a true and accurate copy of Atlantic Casualty's April 6, 2023 letter.

21. On November 19, 2024, Atlantic Casualty sent a supplemental partial disclaimer letter ("Supplemental Partial Disclaimer") to Bayport. Annexed hereto as Exhibit No. 5 is a true and accurate copy of Atlantic Casualty's supplemental disclaimer of coverage letter.

22. An actual controversy exists between the parties as to their rights and obligations under the Atlantic Casualty Policy.

23. Circumstances exist that justify a determination by this Court, pursuant to 28 U.S.C. 2201, of the rights and obligations of the parties under the Atlantic Casualty Policy, and that determination will be beneficial to both Atlantic Casualty and the defendants.

24. Atlantic Casualty has no adequate remedy at law.

### FIRST CAUSE OF ACTION

### A Declaration that Atlantic Casualty has No Duty to Defend or Indemnify Bayport under the EIFS Exclusion Endorsement

26. Atlantic Casualty repeats, reiterates, and re-alleges all allegations of Paragraphs 1 through 24 of the Complaint as if fully set forth herein.

9

27. The Exclusion EIFS endorsement ("EIFS Exclusion Endorsement") to the Policy states, in pertinent part, as follows:

### EXCLUSION EIFS
\* \* \*

This insurance does not apply to any claim, loss, costs or expense for … ["]property damage" … arising from the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an exterior insulation and finish system (commonly referred to as synthetic stucco or EIFS) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system. For the purpose of this endorsement, an exterior insulation and finish system means an exterior cladding or finish system used on any part of any structure, and consisting of:

(1) A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

(2) The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

(3) A reinforced or unreinforced base coat;

(4) A finish coat providing surface texture to which color may be added; and

(5) Any flashing, caulking or sealant used with the system for any purpose.

For the purposes of this exclusion, a direct applied exterior finish system and/or a direct finish system (both commonly referred to as DEFS) is deemed to be substantially similar system to an EIFS system and this endorsement applies equally to what may be referred to as a DEFS.

28. The Underlying Complaint alleges that: (i) "On information and belief, Defendant Bayport installed the Commercial Cement Plaster 3™ manufactured by Dryvit Systems, Inc. ('Stucco System.) at the Subject Building"; (ii) "[o]n December 25, 2020, pieces of stucco façade from the exterior of the Subject Building dislodged and landed on the adjacent building, causing

10

damage to that property"; (iii) "Dryvit determined that the cause of damage was poor workmanship, not faulty product"; (iv) "FSA also visited the Subject Building on December 28 and December 30, 2020 and noted 'cracking stucco' and 'imminent failures of stucco'; (v) "Cole NYC observed open joints and cracking of the Stucco"; (vi) Cole NYC also observed retained water in the Stucco System"; (vii) "Cole NYC observed wet surfaces in the Stucco System"; (viii) "Bayport ... fail[ed] to exercise reasonable and ordinary care in the preparation and installation of the stucco façade of the Subject Building"; and (ix) "Bayport's acts and omissions directly and proximately caused the damage to the Subject Building that resulted in the emergency stabilization and then complete removal and replacement of the stucco façade. *See* Underlying Complaint at ¶¶66, 71, 76, 77, 78, 79; 155, 156.

29. EIFS is an acronym for "Exterior Insulation and Finish System". EIFS is a general class of non-load bearing building cladding systems that provides exterior walls with an insulated, water-resistant, finished surface in an integrated composite material system.

30. Dryvit Systems, Inc. is a manufacture of EIFS products.

31. The EIFS Exclusion Endorsement precludes coverage for property damage "*arising from* the design, manufacture, construction, fabrication, preparation, *installation, application,* maintenance or repair ... of an exterior insulation and finish system (commonly referred to as synthetic stucco or EIFS) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories". (emphasis added).

32. Since the stucco façade of the Building contained EIFS and was improperly designed, manufactured, constructed, fabricated, prepared installed or applied, coverage for the

Underlying Action is entirely precluded by the EIFS Exclusion Endorsement to the Atlantic Casualty Policy.

33. By operation of the EIFS Exclusion Endorsement, Atlantic Casualty is entitled to a declaratory judgment that it has no duty to defend or indemnify Bayport in the Underlying Action under the Atlantic Casualty Policy with respect to the causes of action for breach of contract (second cause of action), negligence (seventh cause of action), breach of warranty (sixteenth cause of action) and breach of implied warranty of good workmanship (eighteenth cause of action).

## SECOND CAUSE OF ACTION

### A Declaration that Atlantic Casualty Has No Duty to Defend or Indemnify Bayport in the Underlying Action On Late Notice Grounds

34. Atlantic Casualty repeats, reiterates, and re-alleges all allegations of Paragraphs 1 through 33 of the Complaint as if fully set forth herein.

35. The commercial general liability form of the Policy, as modified by the New York Changes Commercial General Liability Coverage Form Endorsement, provides, in pertinent part, as follows:

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.**    You and any other involved insured must;

        **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

        \* \* \*

        **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

    **e.**    Notice given by or on behalf of the insured or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered notice to us.

    \* \* \*

**C.**    The following provision is added and supersedes any provision to the contrary:

    Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be

13

shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

36. The alleged property damage occurred on December 25, 2020. The Action was commenced on January 31, 2022. Atlantic Casualty received first notice of the "occurrence", claim and Underlying Action on or around December 15, 2022.

37. The Atlantic Casualty Policy states, in pertinent part, "You must see to it that we are notified as soon as practicable of an 'occurrence' … which may result in a claim."

38. Bayport failed to notify Atlantic Casualty of the "occurrence" until almost two years after it transpired

39. The Atlantic Casualty Policy states, in pertinent part, "You must see to it that we receive written notice of the claim or "suit" as soon as practicable. … You … must [i]mediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit[.]"

40. Bayport failed to notify Atlantic Casualty of the Underlying Action until almost ten months after Bayport was served with the Underlying Complaint.

41. Bayport's notice to Atlantic Casualty of the "occurrence, claim and the Underlying Action was untimely.

42. Atlantic Casualty is entitled to a declaratory judgment that it has no duty to defend or indemnify Bayport in the Underlying Action under the Atlantic Casualty Policy on late notice grounds with respect to the causes of action for breach of contract (second cause of action), negligence (seventh cause of action), breach of warranty (sixteenth cause of action) and breach of implied warranty of good workmanship (eighteenth cause of action).

14

## THIRD CAUSE OF ACTION

### A Declaration that Atlantic Casualty Has No Duty to Defend and Indemnify Bayport By Operation of the Breach of Contract Exclusion

43. Atlantic Casualty repeats, reiterates, and re-alleges all allegations of Paragraphs through 42 of the Complaint as if fully set forth herein.

44. The Atlantic Casualty Policy does not provide coverage for the causes of action in the Underlying Complaint for breach of contract (second cause of action), breach of warranty (sixteenth cause of action) and the implied warranty of good workmanship (eighteenth cause of action) against Bayport because these causes of action do not constitute "property damage" caused by an "occurrence".

45. Coverage for the causes of action in the Underlying Complaint for breach of contract (second cause of action), breach of warranty (sixteenth cause of action) and the implied warranty of good workmanship (eighteenth cause of action) against Bayport is also precluded by the Breach of Contract Exclusion endorsement that state as follows:

### EXCLUSION – BREACH OF CONTRACT

\* \* \*

This insurance does not apply to any claim, loss, costs or expense and no duty to defend is provided by us for … "property damage," … for claims, "suits", allegations, accusations, charges, whether written or oral, express or implied for breach of contract, breach of an implied in law or implied in fact contract. This exclusion also applies to any additional insured under the policy.

46. Atlantic Casualty is entitled to a declaratory judgment that it has no duty to defend or indemnify Bayport in the Underlying Action with respect to the causes of action in the Underlying Complaint for breach of contract (second cause of action), breach of warranty (sixteenth cause of action) and the implied warranty of good workmanship (eighteenth cause of action)

15

because these causes of action do not constitute "property damage" caused by an "occurrence" and by operation of the Breach of Contract Exclusion.

## FOURTH CAUSE OF ACTION

### A Declaration that Atlantic Casualty Has No Duty to Defend and Indemnify Bayport by Operation of Exclusions 2.j., 2.k., 2.l. and 2.m.

47. Atlantic Casualty repeats, reiterates, and re-alleges all allegations of Paragraphs 1 through 46 of the Complaint as if fully set forth herein.

48. Coverage for all property damage incurred by LAM is precluded by the following exclusions:

**2.    Exclusions**

This insurance does not apply to

\* \* \*

**j.    Damage to Property**

\* \* \*

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage arises out of those operations"; or

\* \* \*

Paragraphs (3), (4), (5) ... of this exclusion do not apply to liability assumed under a sidetrack agreement.

\* \* \*

**k.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

16

l.  **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

49.  The Underlying Complaint expressly alleges that the "Nature of Action" is as follows: "This is an action for damages sustained by LAM as a result of Defendants' breach of contract, negligence, and failures relating to the installation of the stucco façade on a 38-story commercial building owned by LAM." *See* Underlying Complaint at ¶1.

50.  Atlantic Casualty is entitled to a declaratory judgment that it has no duty to defend or indemnify Bayport in the Underlying Action because such damage is precluded by operation of the: (i) the Damage to Property Exclusion (Exclusion 2.j.); (ii) the Damage to Your Product

17

Exclusion (Exclusion 2.k.); (iii) the Damage to Your Work Exclusion (Exclusion 2.l.); and (iv) the Damage to Impaired Property or Property Not Physically Injured Exclusion (2.m.).

## FIFTH CAUSE OF ACTION

### A Declaration that Atlantic Casualty is Entitled to Reimbursement from Bayport for the Costs Incurred in Connection with its Defense of Bayport in the Underlying Action

51. Atlantic Casualty repeats, reiterates, and re-alleges all allegations of Paragraphs 1 through 50 of the Complaint as if fully set forth herein.

52. Atlantic Casualty seeks reimbursement from Bayport for the costs incurred in connection with its defense of the Bayport in the Underlying Action.

53. Atlantic Casualty is entitled to recoup all the expenses it incurs in the defense of the Bayport in the Underlying Action.

**WHEREFORE**, Atlantic Casualty respectfully requests that this Court issue a declaratory judgment that:

a. Atlantic Casualty is entitled to a declaration that it has no duty to defend or indemnify Bayport in the Underlying Action by operation of the EIFS Exclusion Endorsement;

b. Atlantic Casualty is entitled to a declaration that it has no duty to defend or indemnify Bayport in the Underlying Action on late notice grounds

18

c.  Atlantic Casualty is entitled to a declaration that it has no duty to defend and indemnify Bayport for the causes of action in the Underlying Complaint for breach of contract (second cause of action), breach of warranty (sixteenth cause of action) and the implied warranty of good workmanship (eighteenth cause of action) because these causes of action do not constitute "property damage" caused by an "occurrence" and by operation of the Breach of Contract Exclusion endorsement.

d.  Atlantic Casualty is entitled to a declaratory judgment that it has no duty to defend or indemnify Bayport in the Underlying Action because such damage is precluded by: (i) the Damage to Property Exclusion (Exclusion 2.j.); (ii) the Damage to Your Product Exclusion (Exclusion 2.k.); (iii) the Damage to Your Work Exclusion (Exclusion 2.l.); and (iv) the Damage to Impaired Property or Property Not Physically Injured Exclusion (2.m.).

e.  Atlantic Casualty is entitled to recoup the costs and expenses that it incurs in defense of Bayport in the Underlying Action; and

f.  Such further and other relief that this Court may deem just and proper.

## JURY DEMAND

Atlantic Casualty demands trial by jury of all issues so triable in this cause.

Dated:  New York, New York
        February 10, 2025

                                    MARSHALL CONWAY BRADLEY & GOLLUB, P.C.

                                    _____
                                    By: Christopher T. Bradley, Esq.
                                        Maria T. Ehrlich, Esq.
                                    Attorneys for Plaintiff
                                    Atlantic Casualty Insurance Company
                                    45 Broadway, Suite 740
                                    New York, New York 10006
                                    (212) 619-4444
                                    cbradley@mcwpc.com
                                    mehrlich@mcwpc.com