# EXHIBIT 2

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 2 of 40

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| **LAM GROUP and LAM PEARL STREET HOTEL LLC,** | : |
| Plaintiffs, | : |
| | : Index No. |
| v. | : |
| | : **SUMMONS** |
| **ANTHONY T. RINALDI LLC D/B/A THE RINALDI GROUP, BAYPORT CONSTRUCTION CORP., NOBUTAKA ASHIHARA ARCHITECT P.C., GENE KAUFMAN ARCHITECT P.C., and FRANK SETA & ASSOCIATES LLC,** | : |
| Defendants. | |

### TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to appear in the Supreme Court of the State of New York, County of New York, by serving an Answer to the annexed Complaint upon Plaintiff's attorney at the address stated below, within the time provided by law as noted below. In case of your failure to answer, judgment will be taken by default in the amount of at least $ 2.8 million with interest thereon, together with costs and disbursements of this action.

Dated: January 31, 2022

_/s/ Jay M. Levin_
Jay M. Levin (NY ID 2427169)
Flaster Greenberg PC
One Tower Bridge
100 Front Street, Suite 100
Conshohocken, PA 19428
(215) 576-1730
Email: Jay.Levin@flastergreenberg.com

Jennifer D. Katz      (NY ID 4336061)
Flaster Greenberg PC
295 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: (212) 268-7111
Email: Jennifer.katz@flastergreenberg.com

**1**

8607306 v1

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 3 of 40

To:

Anthony T. Rinaldi LLC d/b/a The Rinaldi Group
1 Harmon Meadow Blvd.
Secaucus, New Jersey 07094
c/o New York Department of State
One Commerce Plaza
99 Washington Avenue
Albany, New York 12231

Bayport Construction Corp.
206 Railroad Street
Bayport, New York 11705
c/o New York Department of State
One Commerce Plaza
99 Washington Avenue
Albany, New York 12231

Nobutaka Ashihara Architect P.C.
2A Shadow Lane
Larchmont, New York 10538
c/o New York Department of State
One Commerce Plaza
99 Washington Avenue
Albany, New York 12231

Gene Kaufman Architect PC
79 Fifth Avenue, 18th Floor
New York, New York 10003

Frank Seta & Associates LLC
35 West 35th Street, 8th Floor
New York, New York 10001

**NOTE: The law provides that: (a) If this summons is served by its delivery to you personally with the County of New York you must appear and answer within TWENTY (20) days after such service; or (b) If this summons is served by delivery to any person other than you personally, or is served outside the County of New York, or by publication, or by any means other than personal delivery to you within the County of New York, you are allowed THIRTY (30) days after proof of service thereof is filed with the Clerk of the Court within which to appear and answer.**

2

8607306 v1

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 4 of 40

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

LAM GROUP and LAM PEARL STREET    :
HOTEL LLC,    :
                  Plaintiffs,    :
   :
   :
v.    :
   :  Index No.
ANTHONY T. RINALDI LLC D/B/A THE    :
RINALDI GROUP, BAYPORT    :  **VERIFIED**
CONSTRUCTION CORP., NOBUTAKA    :  **COMPLAINT**
ASHIHARA ARCHITECT P.C., GENE    :
KAUFMAN ARCHITECT P.C., and FRANK
SETA & ASSOCIATES LLC,

                 Defendants.

---

TO THE SUPREME COURT OF THE STATE OF NEW YORK

      Plaintiffs, LAM Group and LAM Pearl Street Hotel LLC (collectively, "LAM"), by their

attorneys, Flaster Greenberg PC, as and for their complaint against Defendants Anthony T.

Rinaldi LLC d/b/a The Rinaldi Group, Bayport Construction Corp., Nobutaka Ashihara Architect

P.C., Gene Kaufman Architect P.C., and Frank Seta & Associates, allege as follows:

<u>**NATURE OF THE ACTION**</u>

      1.     This is an action for damages sustained by LAM as a result of Defendants' breach

of contract, negligence, and failures relating to the installation of the stucco façade on a 38-story

commercial building owned by LAM.

<u>**PARTIES**</u>

      2.     Plaintiff, LAM Group, is a domestic company duly authorized to conduct

business within the State of New York. Its principal place of business is 202 Centre Street, 6th

Floor, New York, New York 10013.

1

3.      Plaintiff, LAM Pearl Street Hotel LLC, is a domestic limited liability company duly registered and authorized to conduct business within the State of New York.  Its principal place of business is 202 Centre Street, 6th Floor, New York, New York 10013.

4.      On information and belief, Defendant Anthony T. Rinaldi LLC d/b/a The Rinaldi Group ("Rinaldi") is a domestic limited liability company duly registered and authorized to conduct business within the State of New York.

5.      On information and belief, Defendant Rinaldi has its principal place of business at 1 Harmon Meadow Blvd., Secaucus, New Jersey 07094 and may be served through the New York Department of State.

6.      On information and belief, Defendant Bayport Construction Corp. ("Bayport") is a domestic corporation duly registered and authorized to conduct business within the State of New York.

7.      On information and belief, Defendant Bayport has its principal place of business at 206 Railroad Street, Bayport, New York 11705 and may be served through the New York Department of State.

8.      On information and belief, Defendant, Nobutaka Ashihara Architect P.C. ("NAA") is a domestic corporation duly registered and authorized to conduct business within the State of New York.

9.      On information and belief, Defendant, NAA has its principal place of business at 2A Shadow Lane, Larchmont, New York 10538 and may be served through the New York Department of State.

10.     On information and belief, Defendant Gene Kaufman Architect P.C. ("GKA") is a domestic corporation authorized to conduct business within the State of New York.

2

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 6 of 40

11.     On information and belief, Defendant GKA has its principal place of business at 79 Fifth Avenue, 18th Floor, New York, New York 10003 and may be served at that location.

12.     On information and belief, Defendant Frank Seta & Associates LLC ("FSA") is a domestic limited liability company authorized to conduct business within the State of New York.

13.     On information and belief, Defendant FSA has its principal place of business at 35 West 35th Street, 8th Floor, New York, New York 10001 and may be served at that location.

## JURISDICTION AND VENUE

14.     The Court has general personal jurisdiction over Defendants in this matter pursuant to New York Civil Practice Law & Rules ("CPLR") §302 because Defendants transact business within the state of New York and committed their respective breach of contract and tortious acts within the State of New York.

15.     Pursuant to CPLR §503(a), venue is proper in New York County because a substantial part of the acts and omissions giving rise to the claims in the action occurred in New York County.  New York County is also where the subject building is located and the damages were sustained and where Plaintiffs maintain their place of business.

## FACTUAL BACKGROUND

*The Subject Building*

16.     The structure located at 215 Pearl Street is a 38-story concrete frame commercial building (the "Subject Building").  The façade on the North and East sides of the Subject Building is comprised of aluminum and glass curtain walls from the 1st floor to the 5th floor, and brick masonry and aluminum panels.  The façade on the South and West sides of the Subject Building is clad with stucco on metal lathe.

17.     The Subject Building is owned by LAM.

3

18.     The Subject Building was constructed in 2018 and completed in October 2020.

19.     The construction of the Subject Building (the "Project") involved the retention of various contractors, tradesmen, and consultants.

### *Services Provided By Defendants For The Project*

<u>General Contractor – Defendant Rinaldi</u>:

20.     LAM retained Defendant Rinaldi to serve as the general contractor for the Project.

21.     Under the terms of the contract between LAM and Defendant Rinaldi, the scope of the work undertaken by Rinaldi includes the following:

> 2.03 Contractor [Rinaldi] shall perform and furnish, as hereinafter provided, all contracting services, including all labor, materials, telephone, tools, supplies, equipment, services, transportation, licenses, supervision and hoisting, and shall provide all services, business administration and supervision, necessary for, or incidental to, the successful prosecution, coordination and final completion of the Project (the "Work") in the most expeditious and economical manner, consistent with best industry accepted standards, lawful construction practices and the interests of Owner [LAM] relating to quality, timely completion and economics.  The Work shall be performed and executed in the best and most workmanlike manner by qualified and efficient workers, in strict conformance with the Contract Documents, applicable law and best industry trade practices.  Contractor shall be solely responsible for all construction means, methods, techniques, sequences and procedures relating to the proper execution of the Work except when such means, methods, techniques, sequences and procedures are expressly set forth in the Construction Documents.

First Amendment to Construction Agreement ("Contract") at Art. II., 2.03.  A true and correct copy of the Contract is attached as Exh. 1.[1]

---

[1] The Contract refers to the project as "Courtyard by Marriott Hotel, 213 Pearl Street, NY, NY." Lots were subsequently merged for 213-221 Pearl and the property is now referred to as 215 Pearl Street.

4

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 8 of 40

22.     Under the terms of the Contract between LAM and Defendant Rinaldi, the scope

includes the following:

> 2.05 Contractor agrees that it shall perform and complete all of the
> Work required by the Contract Documents and in connection
> therewith shall:
>
> \*    \*    \*
>
> (r) Perform the Work strictly in accordance with the terms of the
> Contract Documents, recognized trade standards and the applicable
> laws, rules and regulations of governmental authorities having
> jurisdiction over the Work and/or the Project (collectively, the
> "Governmental Authorities") and guard Owner against any delays,
> or defects and deficiencies in the Work.  In connection with the
> foregoing, Contractor shall (i) immediately stop performance of
> any Work which does not comply with the requirements of the
> Contract Documents, recognized trade standards or the applicable
> laws, rules and regulations of Governmental Authorities; (ii) reject
> and correct, or cause to be corrected, those portions of the Work
> which do not conform to the requirements of the Contract
> Documents, recognized trade standards or the applicable laws,
> rules and regulations of Governmental Authorities; (iii) inspect all
> materials, supplies and equipment delivered or installed to ensure
> that the same are in compliance with the requirements of the
> Contract Documents, recognized trade standards and the laws,
> rules and regulations of all Governmental Authorities, and reject
> and require replacement of all non-conforming work; and (iv) not
> employ on the Work any person or subcontractor unfit for or
> unskilled in the assigned task and, remove such unfit or unskilled
> employee or subcontractor from the Project Site[.]

Contract at Art. II., 2.05 (Exh. 1).

23.     The Contract between LAM and Defendant Rinaldi provides as follows:

> 4.07 Contractor shall have full responsibility for all portions of the
> Work performed by every Subcontractor and for all acts and
> omissions (whether willful, negligent, or otherwise) of every
> Subcontractor and such Subcontractor's employees.  All work,
> acts, omissions, and statements, written or oral) [sic] of every
> Subcontractor and such Subcontractor's employees shall be
> deemed those of Contractor for all purposes of this Contract.
> Contractor shall coordinate and supervise the Work performed by
> Subcontractors to the end that the Work is carried out without
> conflict between trades and so that no trade, at any time, causes
> delay to the general progress of the Work.  Contractor shall at all

5

Case 1:25-cv-01163-RA   Document 1-3   Filed 02/10/25   Page 9 of 40

times afford each trade, any separate contractor, and Owner, every
reasonable opportunity for the installation of work and the storage
of materials, so long as no material delay to the general progress of
the Work results.

Contract at Art. II., 4.07 (Exh. 1).

24.   Defendant Rinaldi was responsible for all the work of its subcontractors on the

Project.

25.   Defendant Rinaldi was required to supervise, oversee, monitor, control, and/or

direct the stucco work performed by Defendant Bayport on the Project.

26.   Defendant Rinaldi did not adequately supervise, oversee, monitor, control and/or

direct the stucco work performed by Defendant Bayport on the Project.

27.   The contract between LAM and Defendant Rinaldi provides:

21.01 Contractor warrants and represents that all materials and
equipment incorporated in the Work shall be new and that the
Work shall be of good quality, free from improper workmanship
and defective materials and in strict conformance with the Contract
Documents and all applicable laws.  All Work not conforming to
these requirements, including substitutions not properly approved
and authorized, may be considered defective.

Contract at Art. II., 21.01 (Exh. 1).

28.   There were materials used on the Project, and specifically for the installation of

the stucco façade, that were not new or of good quality.

29.   The Contract between LAM and Defendant Rinaldi provides:

<u>23.20 Integrity and Ethical Conduct</u>.  Contractor and Owner
acknowledge and understand that each is committed to have the
Work performed in accordance with the highest ethical standards
applicable to, or governing, the conduct of construction practices.
In furtherance thereof, Contractor and Owner hereby agree to
comply with and observe all applicable federal, state and local
laws, rules, regulations, requirements, trade standards and ethical
guidelines governing said conduct.

Contract at Art. II., 23.20 (Exh. 1).

6

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 10 of 40

30. Defendant Rinaldi did not comply with all terms of the Contract with LAM.

31. Defendant Rinaldi directed and controlled the means and methods by which the stucco façade was installed.

32. The Contract between LAM and Defendant Rinaldi provides:

23.12 Indemnification.

(a) To the fullest extent permitted by law, Contractor shall indemnify, defend (with counsel acceptable to Owner) and hold harmless Owner, Lender and all entities identified in **EXHIBIT D** (sic) [EXHIBIT C], together with all entities and individuals owning a beneficial interest in such entities and their respective officers, partners, principals members, parents, affiliates, managers, shareholders, directors, agents, employees, servants, successors and assigns (collectively, "Indemnitees", individually, "Indemnitee") from and against all losses, claims (including without limitation those alleging injury to third parties or damage to property of third parties), demands, causes of action, lawsuits, costs, charges, fines, penalties, damages (including without limitation any personal injury, sickness, disease or death, or damage or injury to, loss of or destruction of property, and the loss of use resulting therefrom, and damage to the Work and/or work of others), [sic] expenses (including without limitation the deductible amount of any insurance, self-insured retention payments, attorneys' fees and disbursements, courts costs, expert witness fees and expenses, and any resulting settlement, judgment, or award), liabilities (including without limitation any economic loss suffered by the Indemnitees), obligations, actions and judgments (collectively, "Claims"), arising from, in connection with or relating to: (i) the performance (or non-performance) of the Work; (ii) any negligent or wrongful act or omission of Contractor, its employees, Subcontractors, representatives or other persons for whom the Contractor is responsible; (iii) any breach of the Contract Documents by Contractor, its employees, Subcontractors, representatives or other persons for whom Contractor is responsible; (iv) any claim asserted, or lien or notice of lien filed, by any Subcontractor or supplier of any tier against the Project, or against any Indemnitee in connection with the Work; (v) any violation of law by Contractor, its employees, Subcontractors, representatives or other persons for whom Contractor is responsible; (vi) means, methods, procedures, techniques, or sequences of execution or performance of the Work; ….

\* \* \*

7

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 11 of 40

(d) The indemnity obligations herein shall survive the completion of performance under, and termination of, this Agreement. Contractor shall require that all Subcontractors it retains defend, indemnify, and hold harmless the Indemnitees to the same extent that Contractor is required to defend, indemnify and hold harmless the Indemnitees hereunder.

Contract at Art. 23, 23.12 (Exh. 1).

33.    The Contract between LAM and Defendant Rinaldi provides:

## INSURANCE

12.01 The parties hereby agree that the Project shall be insured as set forth in **EXHIBIT B**. In the event Contractor maintains insurance limits greater than those required in **EXHIBIT B**, Owner and the Additional Insureds identified in **EXHIBIT C** shall be included therein as Additional Insureds to the fullest extent of all such insurance in accordance with all terms and provisions herein.

Contract at Art. XII, 12.01 (Exh. 1).

34.    Exhibit B to the Contract details the insurance requirements for the Contractor.

(Exh. 1).

35.    Exhibit C to the Contract includes LAM as an Additional Insureds to be covered

under Defendant Rinaldi's insurance for this Project. (Exh. 1).

Subcontractor – Defendant Bayport:

36.    Defendant Bayport served as a subcontractor who performed the masonry and

stucco work on the Subject Building.

37.    Under the scope of work for Defendant Bayport:

Work shall comply with all current New York City Building Code [sic], all governing codes, NYC Building Department, Building Management, and all authorities having jurisdiction and applicable national, state and local codes, laws and regulations governing or relating to any portion of this work shall be incorporated into and made a part of these specifications ....

**8**

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 12 of 40

A true and correct copy of the Subcontractor Scope Sheet Checklist ("Subcontractor Scope") is attached as Exh. 2.

38.     Defendant Bayport was "responsible for complying with all manufacturer recommended procedures for the proper performance of their systems and compatibility with adjacent systems." (Exh. 2).

39.     Defendant Bayport was required to "[f]urnish and install all concrete masonry assemblies in accordance with the Contract Documents." (Exh. 2).

40.     Defendant Bayport was required to "[f]urnish and install all reinforcing steel as required into concrete masonry assemblies." (Exh. 2).

41.     Defendant Bayport was required to "coordinate the installation of all anchors, ties and accessories into the work." (Exh. 2).

42.     Defendant Bayport directed and controlled the means and methods by which the stucco façade was installed.

43.     On information and belief, Defendant Rinaldi executed a subcontract with Defendant Bayport ("Subcontract").

44.     The Rider to the Subcontract states:

### 4. **CONTRACTUAL INDEMNIFICATION**

To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Owner, **Anthony T. Rinaldi d/b/a The Rinaldi Group** and all other additional insureds referred to in the master construction contract between **Anthony T. Rinaldi d/b/a The Rinaldi Group** and the Owner (the "Indemnitees") from and against any and all claims, losses, costs, injuries, damages and expenses, including reasonable attorneys' fees brought or assumed against any of the Indemnitees by any person or firm, arising out of or in connection with or as a result of or consequence of the performance of the Work of the Subcontractor under this Agreement, or any additional work, extra work, or add-on work, but only to the extent contributed to by the acts or omissions of the Subcontractor or any person or entity

9

> employed, either directly or indirectly, by the Subcontractor
> including any subcontractors thereof and their employees. This
> indemnification agreement applies and shall be enforceable
> regardless of whether or not such claim is caused in part by a party
> indemnified hereunder.
>
> *    *    *
>
> Subcontractor agrees that its obligation to defend commences
> when a claim covered by this Indemnification provision is made
> against any Indemnitee, even if Subcontractor disputes its
> obligation to indemnify and hold harmless such Indemnitee.

Rider to Subcontract – Insurance Requirements at ¶ 4 (Exh. 3). A true and correct copy of the

Rider to Subcontract – Insurance Requirements is attached as Exh. 3.

45.    Under the Subcontract, Defendant Bayport was required to obtain insurance for its

work on the Project. *See* Rider to Subcontract – Insurance Requirements at ¶¶ 1 and 2 (Exh. 3).

46.    LAM was required to be included as an Additional Insured on the insurance

referenced in paragraph 45 above. *See* Rider to Subcontract – Insurance Requirements at ¶ 1

(Exh. 3).

<u>Architects – Defendants NAA and GKA:</u>

47.    Initially, Defendant NAA was retained as the architect of record for the Project.

48.    Defendant NAA prepared architectural plans for the design and construction of

the Project.

49.    During the course of the construction, LAM and Defendant NAA agreed to

terminate their contractual relationship relating to the Project.

50.    Defendant GKA replaced NAA as the architect for the Project.

51.    Defendant GKA also provided construction administration services for the

Project.

52.    Under the agreement between LAM and Defendant GKA:

10

Case 1:25-cv-01163-RA   Document 1-3   Filed 02/10/25   Page 14 of 40

6. <u>Errors and Omissions</u>. Architect [GKA] shall promptly correct any errors, omissions, or defects resulting from Architect's changes to the Existing Architectural Materials in any of the design documents without any additional cost to the Owner. Correction of any errors, omissions, or defects found in the original Existing Architectural Materials shall be correct by Architect [GKA], but at additional cost to Owner. Such corrections shall not be deemed to diminish or bar any claims or rights Owner may have pursuant to this Agreement, as a matter of law, or in equity.

Addendum to Architectural Services Agreement at ¶ 6. A true and correct copy of the

Addendum to Architectural Services Agreement is attached as Exh. 4.

53.     Defendant GKA was required to check and monitor the means and methods by

which the stucco façade was installed.

54.     Defendant GKA was required to conduct site visits during the duration of the

Project.

55.     During the site visits, Defendant GKA was required to inspect the quality of the

work on the Project.

56.     Defendant GKA did not perform its services consistent with the standard of care

of architects.

57.     Defendant GKA was required to obtain insurance for its work on the Project. *See*

Addendum to Architectural Services Agreement at ¶ 11 (Exh. 4).

58.     LAM was required to be included as an Additional Insured on the insurance

referenced in paragraph 57 above. *See* Addendum to Architectural Services Agreement at ¶ 11

(Exh. 4).

<u>Building Envelope Consultant – Defendant FSA:</u>

59.     LAM retained Defendant FSA, a building envelope consulting firm, to provide

consulting services relating to the "design of the exterior walls, roofing and waterproofing" for

the Project. A true and correct copy of the Final Proposal is attached as Exh. 5.

11

60.     Defendant FSA's scope of work for LAM included design review, including:

Curtain Wall, Masonry, Stucco and Metal Panel

1.  Review architectural drawings and details; provide comments on drawings as they pertain to curtain wall, stucco, window wall and masonry. (up to two submissions).

2.  Review related technical specification, details and performance criteria for other façade components.

*    *    *

4.  Review pertinent project details and drawings for function, performance, compatibility and constructability (up to two submissions).

*    *    *

Roofing and Waterproofing

*    *    *

11. Review related manufacturer's technical specification requirements and performance criteria for areas of the building from ground to the roof level.

Final Proposal at II. Scope of Services (Exh. 5).

61.     Defendant FSA's scope of work for LAM also included the following services:

Phase III- Site Visit Services

15. Conduct observation of work in progress (2-3 days a week), take photographs, review shop drawing and RFI'S and prepare weekly report concerning the contractor's conformance to plans and specifications.

| | |
|---|---|
| Anchoring systems | Mortar and mortar joints |
| Glass and glazing | Fastener installation |
| Gasket and sealants | Parapet and copings |
| Stone installation/alignment | Weeps, end dams and drainage systems |
| Flashing and gutters | Joinery and assembly seals |
| Proper pitch to drain | Terminations at roofs, setback and plaza |
| Underground waterproofing | |

Final Proposal at II. Scope of Services (Exh. 5).

62.     Defendant FSA contracted to perform all of its services to LAM in a "professional and expeditious manner." Addendum at ¶ 6. A true and correct copy of the Addendum To Consulting Agreement is attached as Exh. 6.

12

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 16 of 40

63. The Addendum to the Consulting Agreement states:

> Consultant [FSA] shall indemnify, defend and hold Owner [LAM]
> (its employees, officers, members, principals, and directors)
> harmless from and against any and all claims, loss, cost, expense,
> damage and liability, including reasonable attorneys fees, arising
> out of or resulting from Consultant's [FSA] gross negligence or
> willful misconduct or breach of the Agreement, except to the
> extent such claim, loss, cost, expense, damage or liability is caused
> by negligence, willful misconduct or fraud on the part of the
> Owner. This provision shall survive the termination of the
> Agreement, subject to the applicable statutes of limitations.

Addendum at ¶ 8 (Exh. 6).

64. The Addendum to the Consulting Agreement states that FSA "shall procure and
maintain insurance coverage, at its sole cost and expense, during the term of this Agreement
[and] [a]ll insurance policies procured by Consultant [FSA] shall name Owner [LAM] as
additional insured and such other parties reasonably required by Owner." Addendum at ¶ 7
(Exh. 6).

65. Defendant FSA's services on the Project continued through 2020.

**Dryvit Stucco System**

66. On information and belief, Defendant Bayport installed the Commercial Cement
Plaster 3™ manufactured by Dryvit Systems, Inc. ("Stucco System") at the Subject Building.

67. The manufacturer's specification for the Stucco System provides:

**PART III – EXECUTION**

**3.01 EXAMINATION**

A. Prior to installation of Commercial Cement Plaster 3, it is the
contractor's responsibility to ensure that:

1. The surfaces to receive plaster are free of dust, loose particles,
   oil and other conditions that would affect the adhesion,
   installation or performance of Commercial Cement Plaster 3
   materials.

13

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 17 of 40

2. The lath is of the proper type, installed tight, properly fastened, and meets the requirements of ASTM C 1063, ASTM C 847 (expanded metal), ASTM C 933 (Welded Wire), or ASTM C 1032 (Woven Wire), and local building code requirements.

3. All accessories including corner aids, control and expansion joints, casing beads, etc. are properly fastened and positioned according to contract drawings and local building code requirements.

4. Doors, windows, decks, and other openings and penetrations have been properly flashed in accordance with building code and contract documents.

5. Metal roof flashing has been installed in accordance with Asphalt Roofing Manufacturers Association (ARMA) Standards.

6. The substrate is flat within ¼ in (6.4 mm) in 10 ft (3.0 m).

7. The contractor shall notify the general contractor and/or owner and/or architect of all discrepancies.  Do not proceed until unsatisfactory conditions are resolved.

68.    On information and belief, the metal lath selected to be used with the Stucco System is metal lath that is hot dip galvanized per ASTM A653 and G-90 coating.

69.    The manufacturer's specification for the Stucco System indicates that one type of paper backed metal lath that can be used on this system is "Self-Furring Diamond Mesh metal lath shall be galvanized, minimum 2.5 lbs/sq yd (1.4 kg/m$^2$) or 3.4 lbs/yd$^2$ (1.9 kg/m$^2$) and comply with ASTM C 847."

***Damage Resulting From Defendants' Actions Or Inactions***

70.    On December 24 and December 25, 2020, New York City experienced severe weather conditions including high winds.

71.    On December 25, 2020, pieces of stucco façade from the exterior of the Subject Building dislodged and landed on the adjacent building, causing damage to that property.

14

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 18 of 40

72.  The New York City Department of Buildings ("DOB") was subsequently contacted about the pieces of stucco façade landing on the building adjacent to the Subject Building.

73.  The DOB issued violations to LAM as a result of the events in paragraph 71 above.

74.  Based on communications with the DOB, LAM retained: (a) Cole NYC Inc. (a/k/a George Cole Associates) ("Cole NYC") to perform required emergency stabilization measures; and (b) CANY Architecture and Engineering ("CANY") to inspect the façade and perform probe testing.

75.  After the section of stucco façade fell from the Subject Building, LAM also contacted the manufacturer of the Stucco System, Dryvit Systems, Inc. ("Dryvit"), and a representative of that company inspected the Subject Building.

76.  On inspection of the Subject Building (referenced in paragraph 75 above), Dryvit determined that the cause of damage was poor workmanship, not faulty product.

77.  Defendant FSA also visited the Subject Building on December 28 and December 30, 2020 and noted "cracking stucco" and "imminent failures of stucco."

78.  On information and belief, Cole NYC observed open joints and cracking of the Stucco System.

79.  On information and belief, Cole NYC also observed retained water in the Stucco System.

80.  On information and belief, Cole NYC observed wet surfaces in the Stucco System.

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 19 of 40

81.    CANY performed numerous inspections of the exterior façade of the Subject Building in compliance with the New York City Façade Inspection and Safety Program.

82.    Following an inspection on January 18, 2021, CANY issued a memorandum on January 20, 2021 ("January 20 Memorandum") detailing its observations:

> CANY inspected existing conditions on the South elevation and failed sections of the stucco assembly that had been cut and removed from the failed location by Cole NYC. The following conditions were observed:
>
> - The installed enclosure system is metal-lath stucco over a substrate of cast-in-place concrete.
>
> - Stucco system thickness was found to be inconsistent, ranging from approximately 3/8" to 3/4".
>
> - Powder-actuated fasteners/nails and 1" washers had been employed originally to anchor the lath; these were found to be rusted and deteriorated and appeared brittle.
>
> - Multiple fasteners have experienced material failure.
>
> - The fastener pattern was found to be inconsistent / insufficient.
>
> - The galvanized diamond pattern expanded metal lath was found to be rusted and deteriorated.
>
> - The metal lath was not fully embedded into stucco layers and did not appear to be self-furring or was not properly installed to allow adequate embedment.
>
> - Metal lath diamond opening dimensions measured approximately 0.5" x 0.3".
>
> - Metal lath section edges were overlapped where observed.

January 20 Memorandum at 1. A true and correct copy of the January 20 Memorandum is attached as Exh. 7.

83.    The January 20 Memorandum also states:

> Overall, the stucco assembly as installed has multiple observed deficiencies including inadequate frequency, placement and

16

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 20 of 40

embedment of anchors. The lath appears inadequately furred and therefore inconsistently and inadequately embedded in the stucco matrix. The stucco system components (anchorage and metal lath) in place on the South elevation show excessive deterioration / corrosion, which could be attributed to a combination of incorrect system installation, excessive water infiltration, water accumulation behind the stucco layers and lack of adequate drainage. In addition, the concrete substrate was observed to be irregular with numerous offsets in plane across the area of failure.

January 20 Memorandum at 2 (Exh. 7).

84.     The January 20 Memorandum includes CANY's recommendations:

Based on our observations, the deficiencies appear to be systematic and will permanently affect the integrity of the entire stucco system to the point where long-term stabilization is not a recommended option. Therefore, CANY recommends the full removal of the existing stucco system and replacement with an alternative enclosure system.

January 20 Memorandum at 2 (Exh. 7).

85.     CANY also performed probe testing.

86.     As a result of the work by Cole NYC, the Subject Building was temporarily stabilized.

87.     Based on CANY's inspections, it was determined that the entire stucco façade must be removed and replaced.

88.     LAM retained M&A Projects Inc. ("M&A") to perform the removal and replacement of the entire stucco façade on the Subject Building.

89.     The removal and replacement of the stucco façade commenced on September 22, 2021 and has not been completed as of this date.

90.     Upon commencement of M&A's work, LAM again contacted Dryvit and a representative of the company came to the Subject Building to monitor M&A's work.

17

8607225 v4

91.     When LAM became aware of the events referenced in paragraph 71 above, it contacted Defendant Rinaldi and asked Defendant Rinaldi to fix the Stucco System, but Defendant Rinaldi refused.

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT AGAINST DEFENDANT RINALDI

92.     LAM repeats and realleges each and every allegation in paragraphs 1 through 91 as if fully set forth herein.

93.     LAM required the services and expertise of a general contractor for the Project.

94.     LAM offered, and Defendant Rinaldi accepted, the role of general contractor on the Project.

95.     LAM paid Defendant Rinaldi for its services as general contractor on the Project.

96.     The agreement between LAM and Defendant Rinaldi that Defendant Rinaldi would serve as general contractor on the Project was memorialized with their execution of a written Contract.

97.     LAM performed all conditions it was required to perform under the Contract.

98.     Defendant Rinaldi breached the Contract by, among other things, failing to:
(a) perform the stucco work in the "best and most workmanlike manner by qualified and efficient workers"; (b) comply with the manufacturer's specifications for the installation of the Stucco System; (c) reject and correct deficient and/or non-compliant stucco work; (d) develop and implement proper means and methods for the stucco work; (e) employ materials of good quality and suitable for use in the stucco work; (f) use new and non-defective materials; (g) properly anchor and install the Stucco System; (h) accept responsibility for the breach of contract and negligence of its subcontractor Bayport as Defendant Rinaldi is vicariously liable for damages caused by its subcontractor (i) comply with the insurance requirements under the Contract; and

18

(j) defend and indemnify LAM for property damage claims asserted against LAM by its adjacent property owner.

99. Defendant Rinaldi breached the Contract in such other ways as may be determined during the course of discovery or the trial of this matter.

100. As a result of Defendant Rinaldi's breach, LAM was damaged by incurring significant expenses including expenses for: (a) performing emergency stabilization services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco façade on the Subject Building.

101. As a result of Defendant Rinaldi's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property.

102. LAM demands an award of compensatory damages in an amount of at least $2.8 million.

## SECOND CAUSE OF ACTION – BREACH OF CONTRACT AGAINST DEFENDANT BAYPORT

103. LAM repeats and realleges each and every allegation in paragraphs 1 through 102 as if fully set forth herein.

104. On information and belief, Defendant Rinaldi offered, and Defendant Bayport accepted, the role of subcontractor to perform masonry and stucco work on the Subject Building.

105. On information and belief, Defendant Rinaldi paid Defendant Bayport for its services on the Project.

106. On information and belief, the agreement between Defendants Rinaldi and Bayport was memorialized with the execution of a written contract.

19

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 23 of 40

107.    On information and belief, LAM is an intended third-party beneficiary of the contract between Defendants Rinaldi and Bayport.

108.    Defendant Bayport breached the contract by, among other things, failing to: (a) perform the stucco work in the "best and most workmanlike manner by qualified and efficient workers"; (b) comply with the manufacturer's specifications for the installation of the Stucco System; (c) reject and correct deficient and/or non-compliant stucco work; (d) develop and implement proper means and methods for the stucco work; (e) employ materials of good quality and suitable for use in the stucco work; (f) use new and non-defective materials; (g) properly anchor and install the Stucco System; (h) comply with the insurance requirements under the contract; and (i) defend and indemnify LAM for property damage claims asserted against LAM by its adjacent property owner.

109.    Defendant Bayport breached the contract in such other ways as may be determined during the course of discovery or the trial of this matter.

110.    As a result of Defendant Bayport's breach, LAM was damaged by incurring significant expenses including expenses for: (a) performing emergency stabilization services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco façade on the Subject Building.

111.    As a result of Defendant Bayport's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property.

112.    LAM demands an award of compensatory damages in an amount of at least $2.8 million.

8607225 v4

20

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 24 of 40

## THIRD CAUSE OF ACTION – BREACH OF CONTRACT AGAINST DEFENDANT NAA

113.    LAM repeats and realleges each and every allegation in paragraphs 1 through 112 as if fully set forth herein.

114.    LAM required the services and expertise of an architect on the Project.

115.    LAM offered, and Defendant NAA accepted, the role of architect on the Project.

116.    LAM paid Defendant NAA for its services as architect on the Project.

117.    The agreement between LAM and Defendant NAA that Defendant NAA would serve as architect on the Project was memorialized with their execution of a written contract.

118.    LAM performed all conditions it was required to perform under the contract.

119.    Defendant NAA breached the contract by, among other things, failing to: (a) correct errors, omissions or defects in the architectural materials relating to the Stucco System; (b) develop and implement proper means and methods for the stucco work; (c) inspect the stucco work performed by Defendant Bayport and require the correction of defective stucco work; (d) perform its services consistent with the standard of care of architects; (e) comply with the insurance requirements under the Contract; and (f) defend and indemnify LAM for property damage claims asserted against LAM by its adjacent property owner.

120.    Defendant NAA breached the contract in such other ways as may be determined during the course of discovery or the trial of this matter.

121.    As a result of Defendant NAA's breach, LAM was damaged by incurring significant expenses including expenses for: (a) performing emergency stabilization services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco façade on the Subject Building.

21

8607225 v4

122.    As a result of Defendant NAA's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property.

123.    LAM demands an award of compensatory damages in an amount of at least $2.8 million.

## FOURTH CAUSE OF ACTION – BREACH OF CONTRACT AGAINST DEFENDANT GKA

124.    LAM repeats and realleges each and every allegation in paragraphs 1 through 123 as if fully set forth herein.

125.    LAM required the services and expertise of an architect on the Project.

126.    LAM offered, and Defendant GKA accepted, the role of architect on the Project.

127.    LAM paid Defendant GKA for its services as architect on the Project.

128.    The agreement between LAM and Defendant GKA that Defendant GKA would serve as architect (and perform construction administration services) on the Project was memorialized with their execution of a written contract.

129.    LAM performed all conditions it was required to perform under the contract.

130.    Defendant GKA breached the contract by, among other things, failing to: (a) correct errors, omissions or defects in the architectural materials relating to the Stucco System; (b) develop and implement proper means and methods for the stucco work; (c) inspect the stucco work performed by Defendant Bayport and require the correction of defective stucco work; (d) perform its services consistent with the standard of care of architects; (e) comply with the insurance requirements under the contract; and (f) defend and indemnify LAM for property damage claims asserted against LAM by its adjacent property owner.

22

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 26 of 40

131.    Defendant GKA breached the contract in such other ways as may be determined during the course of discovery or the trial of this matter.

132.    As a result of Defendant GKA's breach, LAM was damaged by incurring significant expenses including expenses for: (a) performing emergency stabilization services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco façade on the Subject Building.

133.    As a result of Defendant GKA's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property.

134.    LAM demands an award of compensatory damages in an amount of at least $2.8 million.

## FIFTH CAUSE OF ACTION – BREACH OF CONTRACT AGAINST DEFENDANT FSA

135.    LAM repeats and realleges each and every allegation in paragraphs 1 through 134 as if fully set forth herein.

136.    LAM required the services and expertise of a building envelope consultant on the Project.

137.    LAM offered, and Defendant FSA accepted, the role of building envelope consultant on the Project.

138.    LAM paid Defendant FSA for its services as building envelope consultant on the Project.

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 27 of 40

139.    The agreement between LAM and Defendant FSA that Defendant FSA would serve as building envelope consultant on the Project was memorialized with their execution of a written Contract.

140.    LAM performed all conditions it was required to perform under the contract.

141.    Defendant FSA breached the contract by, among other things, failing to: (a) correct errors, omissions or defects in the architectural materials relating to the Stucco System; (b) inspect the stucco work performed by Defendant Bayport and require the correction of defective stucco work; (c) review the Dryvit specifications for the Stucco System and ensure compliance with those specifications; (d) perform its services consistent with the standard of care of building envelope consultants; (e) comply with the insurance requirements under the Contract; and (f) defend and indemnify LAM for property damage claims asserted against LAM by its adjacent property owner.

142.    Defendant FSA breached the contract in such other ways as may be determined during the course of discovery or the trial of this matter.

143.    As a result of Defendant FSA's breach, LAM was damaged by incurring significant expenses including expenses for: (a) performing emergency stabilization services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco façade on the Subject Building.

144.    As a result of Defendant FSA's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property.

145.    LAM demands an award of compensatory damages in an amount of at least $2.8 million.

**SIXTH CAUSE OF ACTION – NEGLIGENCE AGAINST DEFENDANT RINALDI**

146.    LAM repeats and realleges each and every allegation in paragraphs 1 through 145 as if fully set forth herein.

147.    Defendant Rinaldi had a duty to LAM to apply the skill and care required of a general contractor in constructing and supervising the construction of the Subject Building including the proper installation of the stucco façade.

148.    Defendant Rinaldi breached its duty: (a) by failing to exercise reasonable and ordinary care in the preparation for and installation of the stucco façade on the Subject Building; (b) as it is vicariously liable for the breach of contract and negligence of its subcontractor Bayport; and (c) in such other ways as may be determined during the course of discovery or the trial of this matter.

149.    Defendant Rinaldi's acts and omissions directly and proximately caused the damage to the Subject Building that resulted in the emergency stabilization and then complete removal and replacement of the stucco façade.

150.    As a result of Defendant Rinaldi's breach of their duty, LAM was damaged by incurring significant expenses including expenses for: (a) performing emergency stabilization services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco façade on the Subject Building.

151.    As a result of Defendant Rinaldi's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent

8607225 v4

property owner whose property was damaged when pieces of stucco façade from the exterior of
the Subject Building landed on its property.

152.    LAM demands an award of compensatory damages in an amount of at least $2.8
million.

## SEVENTH CAUSE OF ACTION – NEGLIGENCE AGAINST DEFENDANT BAYPORT

153.    LAM repeats and realleges each and every allegation in paragraphs 1 through 152
as if fully set forth herein.

154.    Defendant Bayport had a duty to LAM to perform its work in a good and
workmanlike manner including properly installing the stucco façade on the Subject Building.

155.    Defendant Bayport breached its duty by failing to exercise reasonable and
ordinary care in the preparation for and installation of the stucco façade on the Subject Building
and in such other ways as may be determined during the course of discovery or the trial of this
matter.

156.    Defendant Bayport's acts and omissions directly and proximately caused the
damage to the Subject Building that resulted in the emergency stabilization and then complete
removal and replacement of the stucco façade.

157.    As a result of Defendant Bayport's breach of their duty, LAM was damaged by
incurring significant expenses including expenses for: (a) performing emergency stabilization
services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco
façade on the Subject Building.

158.    As a result of Defendant Bayport's breach, LAM was damaged by incurring costs
and expenses to address and defend against claims for property damage made by the adjacent

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 30 of 40

property owner whose property was damaged when pieces of stucco façade from the exterior of

the Subject Building landed on its property.

159.    LAM demands an award of compensatory damages in an amount of at least $2.8

million.

### EIGHTH CAUSE OF ACTION – NEGLIGENCE AGAINST DEFENDANT NAA

160.    LAM repeats and realleges each and every allegation in paragraphs 1 through 159

as if fully set forth herein.

161.    Defendant NAA had a duty to LAM to prepare accurate and correct architectural

plans for the installation of the stucco façade on the Subject Building and supervise the proper

installation of the stucco façade.

162.    Defendant NAA knew their plans would be utilized in the construction of the

Subject Building including the installation of the stucco façade.

163.    Defendant NAA breached its duty by failing to exercise reasonable and ordinary

care in the preparation for and installation of the stucco façade on the Subject Building and in

such other ways as may be determined during the course of discovery or the trial of this matter.

164.    Defendant NAA's acts and omissions directly and proximately caused the damage

to the Subject Building that resulted in the emergency stabilization and then complete removal

and replacement of the stucco façade.

165.    As a result of Defendant NAA's breach of their duty, LAM was damaged by

incurring significant expenses including expenses for: (a) performing emergency stabilization

services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco

façade on the Subject Building.

8607225 v4

Case 1:25-cv-01163-RA     Document 1-3     Filed 02/10/25     Page 31 of 40

166.    As a result of Defendant NAA's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property.

167.    LAM demands an award of compensatory damages in an amount of at least $2.8 million.

## NINTH CAUSE OF ACTION – NEGLIGENCE AGAINST DEFENDANT GKA

168.    LAM repeats and realleges each and every allegation in paragraphs 1 through 167 as if fully set forth herein.

169.    Defendant GKA had a duty to LAM to correct errors and omissions in the architectural plans to ensure the proper installation of the stucco façade on the Subject Building and to supervise the proper installation of the stucco façade.

170.    Defendant GKA breached its duty by failing to exercise reasonable and ordinary care in the preparation for and installation of the stucco façade on the Subject Building and in such other ways as may be determined during the course of discovery or the trial of this matter.

171.    Defendant GKA's acts and omissions directly and proximately caused the damage to the Subject Building that resulted in the emergency stabilization and then complete removal and replacement of the stucco façade.

172.    As a result of Defendant GKA's breach of their duty, LAM was damaged by incurring significant expenses including expenses for: (a) performing emergency stabilization services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco façade on the Subject Building.

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 32 of 40

173.    As a result of Defendant GKA's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property.

174.    LAM demands an award of compensatory damages in an amount of at least $2.8 million.

**TENTH CAUSE OF ACTION – NEGLIGENCE AGAINST DEFENDANT FSA**

175.    LAM repeats and realleges each and every allegation in paragraphs 1 through 174 as if fully set forth herein.

176.    Defendant FSA had a duty to LAM to provide building envelope expertise.

177.    Defendant FSA had a duty to LAM to correct errors and omissions in the architectural plans to ensure the proper installation of the stucco façade on the Subject Building and to supervise the proper installation of the stucco façade

178.    Defendant FSA breached its duty by failing to exercise reasonable and ordinary care in the preparation for and installation of the stucco façade on the Subject Building and in such other ways as may be determined during the course of discovery or the trial of this matter.

179.    Defendant FSA's acts and omissions directly and proximately caused the damage to the Subject Building that resulted in the emergency stabilization and then complete removal and replacement of the stucco façade.

180.    As a result of Defendant FSA's breach of their duty, LAM was damaged by incurring significant expenses including expenses for: (a) performing emergency stabilization services; (b) investigating the extent of damage; and (c) removing and replacing the entire stucco façade on the Subject Building.

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 33 of 40

181.    As a result of Defendant FSA's breach, LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property.

182.    LAM demands an award of compensatory damages in an amount of at least $2.8 million.

### ELEVENTH CAUSE OF ACTION – NEGLIGENT SUPERVISION AGAINST DEFENDANT RINALDI

183.    LAM repeats and realleges each and every allegation in paragraphs 1 through 182 as if fully set forth herein.

184.    Defendant Rinaldi had a duty to supervise, oversee, monitor, control and/or direct Defendant Bayport in connection with the Project.

185.    Defendant Rinaldi did not correct Defendant Bayport's negligent, reckless and careless construction means and methods for the installation of the Stucco System.

186.    Defendant Rinaldi's negligent supervision, direction and control of Defendant Bayport caused damage to LAM.

187.    LAM has been damaged in an amount of at least $2.8 million.

### TWELFTH CAUSE OF ACTION – NEGLIGENT SUPERVISION AGAINST DEFENDANT NAA

188.    LAM repeats and realleges each and every allegation in paragraphs 1 through 187 as if fully set forth herein.

189.    Defendant NAA had a duty to supervise, oversee, monitor, control and/or direct Defendants Rinaldi and Bayport in connection with the Project.

190.    Defendant NAA did not correct Defendants Rinaldi and Bayport's negligent, reckless and careless construction means and methods for the installation of the Stucco System.

30

8607225 v4

191.    Defendant NAA's negligent supervision, direction and control of Defendants Rinaldi and Bayport caused damage to LAM.

192.    LAM has been damaged in an amount of at least $2.8 million.

## THIRTEENTH CAUSE OF ACTION – NEGLIGENT SUPERVISION AGAINST DEFENDANT GKA

193.    LAM repeats and realleges each and every allegation in paragraphs 1 through 192 as if fully set forth herein.

194.    Defendant GKA had a duty to supervise, oversee, monitor, control and/or direct Defendants Rinaldi and Bayport in connection with the Project.

195.    Defendant GKA did not correct Defendants Rinaldi and Bayport's negligent, reckless and careless construction means and methods for the installation of the Stucco System.

196.    Defendant GKA's negligent supervision, direction and control of Defendants Rinaldi and Bayport caused damage to LAM.

197.    LAM has been damaged in an amount of at least $2.8 million.

## FOURTEENTH CAUSE OF ACTION – NEGLIGENT SUPERVISION AGAINST DEFENDANT FSA

198.    LAM repeats and realleges each and every allegation in paragraphs 1 through 197 as if fully set forth herein.

199.    Defendant FSA had a duty to supervise, oversee, monitor, control and/or direct Defendants Rinaldi and Bayport in connection with the Project.

200.    Defendant FSA did not correct Defendants Rinaldi and Bayport's negligent, reckless and careless construction means and methods for the installation of the Stucco System.

201.    Defendant FSA's negligent supervision, direction and control of Defendants Rinaldi and Bayport caused damage to LAM.

202.    LAM has been damaged in an amount of at least $2.8 million.

31

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 35 of 40

## FIFTEENTH CAUSE OF ACTION – BREACH OF WARRANTY AGAINST DEFENDANT RINALDI

203.    LAM repeats and realleges each and every allegation in paragraphs 1 through 202 as if fully set forth herein.

204.    Defendant Rinaldi warranted and represented that all materials used in the Project would be new.

205.    Defendant Rinaldi warranted and represented that the work on the Project, including the stucco work, would be "free from improper workmanship and defective materials."

206.    Defendant Rinaldi failed to use new materials for the stucco work on the Project.

207.    The Stucco System was improperly installed.

208.    The stucco work was not "free from improper workmanship."

209.    Defective materials were used in the installation of the Stucco System.

210.    After the events referenced in paragraph 71 above, LAM asked Defendant Rinaldi to fix the Stucco System, but Defendant Rinaldi refused.

211.    As a result of Defendant Rinaldi's failures, it breached the warranty it made to LAM.

212.    As a direct, proximate and foreseeable result of Defendant Rinaldi's breach of warranty, LAM has been damaged in an amount of at least $2.8 million.

## SIXTEENTH CAUSE OF ACTION – BREACH OF WARRANTY AGAINST DEFENDANT BAYPORT

213.    LAM repeats and realleges each and every allegation in paragraphs 1 through 212 as if fully set forth herein.

214.    On information and belief, Defendant Bayport warranted and represented to Defendant Rinaldi that all materials used in the Project would be new.

32

215.     On information and belief, Defendant Bayport warranted and represented that the work on the Project, including the stucco work, would be performed properly and without the use of defective materials.

216.     On information and belief, LAM was an intended third-party beneficiary of the warranties and representations made by Defendant Bayport to Defendant Rinaldi.

217.     Defendant Bayport failed to use new materials for the stucco work on the Project.

218.     The Stucco System was improperly installed.

219.     The stucco work was not installed properly.

220.     Defective materials were used in the installation of the Stucco System.

221.     As a result of Defendant Bayport's failures, it breached the warranty it made to Defendant Rinaldi and LAM.

222.     As a direct, proximate and foreseeable result of Defendant Rinaldi's breach of warranty, LAM has been damaged in an amount of at least $2.8 million.

## SEVENTEENTH CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF GOOD WORKMANSHIP AGAINST DEFENDANT RINALDI

223.     LAM repeats and realleges each and every allegation in paragraphs 1 through 222 as if fully set forth herein.

224.     Defendant Rinaldi represented and warranted that all stucco work would be completed in a workmanlike manner consistent with standard industry practices.

225.     Defendant Rinaldi failed to install the Stucco System in a satisfactory manner.

226.     Defendant Rinaldi failed to fix the Stucco System after the events referenced in paragraph 71 above.

227.     As a result of Defendant Rinaldi's failures, it breached the implied warranty of good workmanship made to LAM.

33

8607225 v4

228.    As a direct, proximate and foreseeable result of Defendant Rinaldi's breach of the warranty of good workmanship, LAM has been damaged in an amount of at least $2.8 million.

## EIGHTEENTH CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF GOOD WORKMANSHIP AGAINST DEFENDANT BAYPORT

229.    LAM repeats and realleges each and every allegation in paragraphs 1 through 228 as if fully set forth herein.

230.    Defendant Bayport represented and warranted that all stucco work would be completed in a workmanlike manner consistent with standard industry practices.

231.    Defendant Bayport failed to install the Stucco System in a satisfactory manner.

232.    As a result of Defendant Bayport's failures, it breached the implied warranty of good workmanship it made to LAM.

233.    As a direct, proximate and foreseeable result of Defendant Rinaldi's breach of the warranty of good workmanship, LAM has been damaged in an amount of at least $2.8 million.

## NINETEENTH CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF GOOD WORKMANSHIP AGAINST DEFENDANT NAA

234.    LAM repeats and realleges each and every allegation in paragraphs 1 through 233 as if fully set forth herein.

235.    Defendant NAA represented and warranted that all stucco work would be completed in a workmanlike manner consistent with standard industry practices.

236.    Defendant NAA failed to ensure that the Stucco System was installed in a satisfactory manner.

237.    As a result of Defendant NAA's failures, it breached the implied warranty of good workmanship it made to LAM.

238.    As a direct, proximate and foreseeable result of Defendant NAA's breach of the warranty of good workmanship, LAM has been damaged in an amount of at least $2.8 million.

34

8607225 v4

Case 1:25-cv-01163-RA     Document 1-3     Filed 02/10/25     Page 38 of 40

## TWENTIETH CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF GOOD WORKMANSHIP AGAINST DEFENDANT GKA

239. LAM repeats and realleges each and every allegation in paragraphs 1 through 238 as if fully set forth herein.

240. Defendant GKA represented and warranted that all stucco work would be completed in a workmanlike manner consistent with standard industry practices.

241. Defendant GKA failed to ensure that the Stucco System was installed in a satisfactory manner.

242. As a result of Defendant GKA's failures, it breached the implied warranty of good workmanship it made to LAM.

243. As a direct, proximate and foreseeable result of Defendant GKA's breach of the warranty of good workmanship, LAM has been damaged in an amount of at least $2.8 million.

## TWENTY-FIRST CAUSE OF ACTION - BREACH OF IMPLIED WARRANTY OF GOOD WORKMANSHIP AGAINST DEFENDANT FSA

244. LAM repeats and realleges each and every allegation in paragraphs 1 through 243 as if fully set forth herein.

245. Defendant FSA represented and warranted that all stucco work would be completed in a workmanlike manner consistent with standard industry practices.

246. Defendant FSA failed to ensure that the Stucco System was installed in a satisfactory manner.

247. As a result of Defendant FSA's failures, it breached the implied warranty of good workmanship it made to LAM.

248. As a direct, proximate and foreseeable result of Defendant FSA's breach of the warranty of good workmanship, LAM has been damaged in an amount of at least $2.8 million.

8607225 v4

Case 1:25-cv-01163-RA    Document 1-3    Filed 02/10/25    Page 39 of 40

**WHEREFORE,** Plaintiffs, LAM Group and LAM Pearl Street Hotel LLC hereby respectfully request judgment in favor of Plaintiffs and against Defendants including the following relief:

a.  compensatory damages in the amount of at least $2.8 million;

b.  pre-judgment interest at the maximum rate allowed by applicable law;

c.  post-judgment interest at the maximum rate allowed by applicable law;

d.  such other an further relief, at law or in equity, as this Court may deem just and proper.

Respectfully submitted,

**FLASTER GREENBERG PC**

*/s/ Jay M. Levin*
Jay M. Levin (NY ID: 2427169)
One Tower Bridge
100 Front Street, Suite 100
Conshohocken, PA 19428
(215) 576-1730
Jay.Levin@flastergreenberg.com

Jennifer D. Katz (NY ID 4336061)
295 Madison Avenue, 12th Floor
New York, NY 10017
Telephone: (212) 268-7111
Email: Jennifer.katz@flastergreenberg.com

Dated: January 31, 2022

VERIFICATION

Kin Chung Lam, being duly sworn, deposes and says:

I am Manager of Lam Pearl Street Hotel LLC, a Plaintiff in the above-entitled action.  I

have read the foregoing complaint and know the contents thereof.  The same are true to my

knowledge, except as to matters therein stated to be alleged on information and belief and as to

those matters I believe them to be true.


Kin Chung Lam


Sworn to before me this
___day of January 2022


Notary Public

JULIE CHO
Notary Public, State of New York
Reg. No. 02CH6311123
Qualified in New York County
Commission Expires February 4, 2023

37