# EXHIBIT 5



400 Commerce Court
Goldsboro, NC 27534
877.222.5522

November 19, 2024

**CERTIFIED MAIL**

**(9589 0710 5270 2427 0673 73)**

**AND REGULAR MAIL**

Bayport Construction Corp.
1286 Prospect Place
Brooklyn, NY  11213

Re:   Policy No.:       L395000005-0
      Claim No.:        01-NY-023283
      Policy No.        L036009259-2 (7/25/20-7/25/21)
      Insured:          Bayport Construction Corp.
      Claimants:        LAM Group and LAM Pearl Street Hotel LLC
      Case Name:        LAM Group and LAM Pearl Street Hotel, LLC v. Anthony
                        T. Rinaldi LLC d/b/a The Rinaldi Group, et al., Index No.
                        650465/2022, New York Supreme Court, New York
                        County

## SUPPLEMENTAL PARTIAL DISCLAIMER OF COVERAGE

Dear Sir/Madame:

We are writing to update you on Atlantic Casualty Insurance Company's ("Atlantic Casualty") coverage obligations to Bayport Construction Corp. ("Bayport") in connection with the action ("Action") captioned: *LAM Group and LAM Pearl Street Hotel, LLC v. Anthony T. Rinaldi LLC d/b/a The Rinaldi Group, et al.*, Index No. 650465/2022, New York Supreme Court, New York County.

The complaint ("Complaint") in the Action alleges that: (i) Bayport Construction Corp. ("Bayport"), a subcontractor (and Atlantic Casualty's named insured), performed mason and stucco work in connection with the construction of a building ("Building") located at 215 Pearl Street, New York, New York; (ii) on December 25, 2020, after the Building was constructed, pieces of the stucco dislodged and caused property damage to both the adjacent building ("Adjacent Building") and the Building itself.

This will supplement our letter dated April 6, 2023.

As is set forth below,

- There is no coverage for the removal and replacement of the stucco façade of the Building.

- Coverage for the Action is entirely precluded by the Exclusion EIFS endorsement ("EIFS Exclusion Endorsement").

- Coverage for the Action is entirely precluded due to Bayport's failure to timely report the "occurrence",[1] claim and suit to Atlantic Casualty.

- Coverage for the Action is precluded by Exclusion 2.j. (the Damage to Property Exclusion), Exclusion 2.k. (the Damage To Your Product Exclusion), Exclusion 2.1 (the Damage to Your Work Exclusion) and Exclusion 2.m. (the "Damage to Impaired Property or Property Not Physically Exclusion).

- Atlantic Casualty will continue to defend Bayport under Atlantic Casualty Policy No. L036009259-2 (the "Policy") issued to Bayport for the policy period of July 25, 2020 to July 25, 2021.

Atlantic Casualty will address the allegations in the Complaint but understands that these allegations are unproven and may be untrue, incomplete or embellished. Atlantic Casualty does not conclude that any allegation is true. No statement in this letter should be construed otherwise.

**The Complaint**

On January 31, 2022, the LAM Group and LAM Pearl Street (collectively, "LAM or Plaintiff") filed the Complaint against: (i) Anthony T. Rinaldi LLC d/b/a the Rinaldi Group; (ii) Bayport; (iii) Nobutaka Ashihara Architect P.C.; (iv) Gene Kaufman Architect P.C.; and (v) Frank Seta & Associates LLC ("FSA"). The *gravamen* of the Complaint is that Plaintiff sustained damages as a result of defendants' breach of contract, breach of warranty and the breach of implied warranty of good workmanship and negligence relating to stucco becoming dislodged from the façade of the 38-story commercial building owned by Plaintiff.

The Complaint alleges that: (i) the Building is a 38-story concrete frame commercial building; (ii) the façade on the North and East sides of the Building is comprised of aluminum and glass curtain walls from the first floor to the fifth floor, and brick masonry and aluminum panels; (iii) the façade on the South and West sides of the Building is clad with stucco on metal lathe; (iv) the Building was constructed in 2018 and completed in October 2020; (v) LAM retained Rinaldi to serve as the general contractor for the construction of the Building; (vi) Bayport was a subcontractor who performed the masonry and stucco work on the Building; (vii) Bayport installed the Commercial Cement Plaster 3™ manufactured by Dryvit Systems, Inc. ("Stucco System") at the Building; (viii) on December 24 and 25, 2020, New York City experienced severe weather conditions including high winds; (ix) on December 25, 2020, pieces of the stucco façade dislodged and struck the Adjacent Building causing damage to that property; (x) the New York City Department of

---

[1] Quoted terms unless otherwise defined shall have the same meanings ascribed to them in the policy at issue.

Buildings issued violations to LAM; (xi) Dryvit determined that the cause of damage was poor workmanship, not faulty product; and (xii) the entire stucco facade of the Building had to be removed and replaced

LAM alleges that as result of Bayport's breach of contract and negligence, LAM was damaged by: (i) performing emergency stabilization services; (ii) investigating the extent of damage; (iii) removing the entire stucco façade of the Building; and (iv) incurring costs and expenses to address and defend claims for property damage made by the Adjacent Property owner.

LAM seeks compensatory damages in the amount of $2.8 million.

### The Policy

Atlantic Casualty issued the Policy, a commercial general liability policy, to Bayport for the policy period of July 25, 2020 to July 25, 2021. The Policy has a $1 million Each Occurrence Limit/$2 million General Aggregate Limit subject to a $500 Per Claim deductible for bodily injury and/or property damage liability combined.

The insuring agreement of the Policy, as modified by the Insuring Agreement Amendment – Use of Extrinsic Evidence – Right to Defend endorsement, states, in pertinent part, as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.  Insuring Agreement**
>
>  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of … "property" to which this insurance applies. We will have the right and the duty to defend the insured against any "suit" seeking covered damages. We will have the right, but not the duty, to defend any insured against any "suit" for which we dispute coverage. We will have no duty to defend or indemnify any insured against any "suit" seeking damages for …"property damage" where there is no coverage under the policy. We will have the right, but not the duty, to defend those qualifying as an additional insured by way of an additional insured endorsement.
>
>   We may look to extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against a lawsuit seeking … "property damage" provided that extrinsic evidence does not contradict a claimant's pleaded allegation. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit that may result. But:

3

        **(1)**    The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**; and

        **(2)**    Our right and duty to defend a claim to which this insurance applies ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **Coverages A or B** or medical expenses under **Coverage C**.

        \* \* \*

**b.**    *This insurance applies to … "property damage" only if*:

        **(1)**    *The … "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

        **(2)**    *The … "property damage" occurs during the policy period …*

(emphasis added).

The Policy, as modified by the Amended Definition – Property Damage endorsement, contains the following definitions:

**8.**    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    **a.**    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**    Your fulfilling the terms of the contract or agreement.

**9.**    "Insured contract" means:

        \* \* \*

    **f.**    That part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay for … "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**16.**   "Products-completed operations hazard":

    **a.**   Includes all "bodily injury" and "property damage" occurring away from the premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**   Products that are still in your physical possession; or

        **(2)**   Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**   When all of the work called for in your contract has been completed.

            **(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete.

**17.**   "Property damage" means:

    **a.**   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

However, "property damage" does not include breach of contract, breach of any express or implied warranty, deceptive trade practices or violation of any consumer protection laws.

"Property damage" does not include any cost or expense to repair, replace or complete any work to any property that you, or any insured, are otherwise

5

obligated to repair, replace or complete pursuant to the terms of any contract.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic date means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy discs, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

* * *

**21.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:
        **(1)** Work or operations performed by you or on your behalf; and
        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

      **b.**      Includes:

           **(1)**     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

           **(2)**     The providing of or failure to provide warnings or instructions.

## Atlantic Casualty's Coverage Position

### The EIFS Exclusion Endorsement

Coverage for the Action is entirely precluded by the EIFS Exclusion Endorsement to the Policy. The EIFS Exclusion Endorsement states, in pertinent part, as follows:

### EXCLUSION EIFS
\* \* \*

This insurance does not apply to any claim, loss, costs or expense for … ["]property damage" … arising from the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an exterior insulation and finish system (commonly referred to as synthetic stucco or EIFS) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system. For the purpose of this endorsement, an exterior insulation and finish system means an exterior cladding or finish system used on any part of any structure, and consisting of:

(1)    A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

(2)    The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

(3)    A reinforced or unreinforced base coat;

(4)    A finish coat providing surface texture to which color may be added; and

(5)    Any flashing, caulking or sealant used with the system for any purpose.

For the purposes of this exclusion, a direct applied exterior finish system and/or a direct finish system (both commonly referred to as DEFS) is deemed to be substantially similar system to an EIFS system and this endorsement applies equally to what may be referred to as a DEFS.

The Complaint alleges, in pertinent part, that: (i) "On information and belief, Defendant Bayport

7

installed the Commercial Cement Plaster 3™ manufactured by Dryvit Systems, Inc. ('Stucco System) at the Subject Building"; (ii) "[o]n December 25, 2020, pieces of stucco façade from the exterior of the Subject Building dislodged and landed on the adjacent building, causing damage to that property"; (iii) "Dryvit determined that the cause of damage was poor workmanship, not faulty product"; (iv) "FSA also visited the Subject Building on December 28 and December 30, 2020 and noted 'cracking stucco' and 'imminent failures of stucco'; (v) "Cole NYC observed open joints and cracking of the Stucco";  (vi) Cole NYC also observed retained water in the Stucco System"; (vii) "Cole NYC observed wet surfaces in the Stucco System"; (viii) "Bayport … fail[ed] to exercise reasonable and ordinary care in the preparation and installation of the stucco façade of the Subject Building"; and (ix) "Bayport's acts and omissions directly and proximately caused the damage to the Subject Building that resulted in the emergency stabilization and then complete removal and replacement of the stucco façade. *See* Complaint at ¶¶66, 71, 76, 77, 78, 79; 155, 156.

EIFS is an acronym for "Exterior Insulation and Finish System."  EIFS is a general class of non-load bearing building cladding systems that provides exterior walls with an insulated, water-resistant, finished surface in an integrated composite material system. Dryvit Systems, Inc. is a manufacture of EIFS products.

Based on the allegations in the Complaint,  the "stucco façade" of the Building consisted of EIFS.  The EIFS Exclusion Endorsement precludes coverage for property damage "arising from the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair … of an exterior insulation and finish system (commonly referred to as synthetic stucco or EIFS) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories".  (emphasis added).  As such, coverage for the Action is entirely precluded by the EIFS Exclusion Endorsement.

**Late Notice**

 Bayport's notice to Atlantic Casualty was untimely. The CGL form of the Policy, as modified by the New York Changes Commercial General Liability Coverage Form Endorsement, provides, in pertinent part, as follows:

> **2.** **Duties in the Event of Occurrence, Offense, Claim or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:
>
> **(1)** How, when and where the "occurrence" or offense took place;
>
> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

8

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c**.    You and any other involved insured must;

        **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

        \* \* \*

        **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

        \* \* \*

    Notice given by or on behalf of the insured or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered notice to us.

        \* \* \*

    **C.**    The following provision is added and supersedes any provision to the contrary:

    Failure to give notice to us as required under this Coverage Part shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

The alleged damage occurred on December 25, 2020. The Action was commenced on January 31, 2022. On or around December 15, 2022, Atlantic Casualty received first notice of the

"occurrence," claim and suit. Bayport did not first notify Atlantic Casualty of the property damage until almost two years after it transpired and failed to report to Atlantic Casualty the Action until almost ten months after Bayport was served with the Complaint. As such, coverage for the Action is precluded on late notice grounds.

**Additional Coverage Defenses**

The Policy does not provide coverage for the breach of contract, the breach of warranty and the implied warranty of good workmanship causes of action against Bayport. These causes of action do not constitute "property damage" caused by an "occurrence". Further, coverage for the for the breach of contract, the breach of warranty and the breach of the implied warranty of good workmanship causes of action is precluded by the Breach of Contract Exclusion endorsement and the Contractual Liability Exclusion that respectively state as follows:

### EXCLUSION – BREACH OF CONTRACT

\* \* \*

> This insurance does not apply to any claim, loss, costs or expense and no duty to defend is provided by us for … "property damage," … for claims, "suits", allegations, accusations, charges, whether written or oral, express or implied for breach of contract, breach of an implied in law or implied in fact contract. This exclusion also applies to any additional insured under the policy.

\* \* \*

> **2.   Exclusions**
>
> This insurance does not apply to
>
> \* \* \*
>
> **b.   Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; or
>
> **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. ….

The Duties In the Event of Occurrence, Offense, Claim or Suit contains a provision which states:

10

    **2.**    **Duties in the Event of Occurrence, Offense, Claim or Suit**

* * *

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consents.

The Complaint alleges that "LAM was damaged by incurring costs and expenses to address and defend against claims for property damage made by the adjacent property owner whose property was damaged when pieces of stucco façade from the exterior of the Subject Building landed on its property." *See* Complaint at ¶¶ 111, 151. To the extent LAM seeks reimbursement for payments made to the adjacent property owner, such payments constitute voluntary payments and are not covered by the Policy. In addition, any payments LAM made without the express prior consent of Atlantic Casualty are likewise precluded.

**<u>Faulty Workmanship Exclusions</u>**

Coverage is precluded by the following exclusions which bar coverage for Bayport's faulty workmanship as follows:

    **2.**    **Exclusions**
        This insurance does not apply to

* * *

    **j.**    **Damage to Property**

* * *

    **(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage arises out of those operations"; or

* * *

    Paragraphs **(3)**, **(4)**, **(5)** … of this exclusion do not apply to liability assumed under a sidetrack agreement.
* * *

    **k.**    **Damage To Your Product**

    "Property damage" to "your product" arising out of it or any part of it.

    **l.**    **Damage To Your Work**

    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

      **m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

The definition of "Your Work" and "Your Produce" includes:

Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work";

\* \* \*

This statement of Atlantic Casualty's position is without prejudice to Bayport or to Atlantic Casualty. It is based on information provided to date. Atlantic Casualty reserves its right to supplement this statement of its position with additional grounds for reserving its rights or denying coverage under any of its policies on any grounds whether known now or should such grounds appear hereafter. Nothing in this letter shall be construed as a waiver, extinguishment, or modification of any rights, remedies, terms, conditions, and/or exclusions contained in the Atlantic Casualty policies and/or provided by applicable law. We are filing a declaratory judgment action in connection with the issues discussed in this letter to obtain a declaration that Atlantic Casualty has not duty to defend or indemnify Bayport with respect to the Action.

Atlantic Casualty may reconsider its position in light of any additional information Bayport may have or any analysis Bayport may wish to present that, in its opinion, shows that coverage applies to this claim so clearly that Atlantic Casualty should have no need to deny coverage. If you wish us to re-examine this matter on that basis, please write to the undersigned representative, setting out any such additional information or analysis. If such additional information is included in documents that have not already been supplied to Atlantic Casualty, please enclose copies of those documents.

Should you wish to take this matter up with Insurance Division of the New York State Department of Financial Services, you may file with the Department either on its website at

www.dfs.ny.gov/consumer/fileacomplaint.htm or you may write to or visit the Consumer Assistance Unit, NYS Department of Financial Services, at: One State Street, New York, NY 10004-1511 or One Commerce Plaza, Albany, NY 12257.

For information on our privacy policies, visit www.atlanticcasualty.net/privacy.

Sincerely,

*Varen R. Moore*

Varen R. Moore
Litigation Specialist Manager
Tel & Fax: (919) 759-3261
vmoore@atlanticcasualty.net


CC:   **Via E-Mail and Regular Mail**
Flaster Greenberg PC
Attorneys for Plaintiffs
One Tower Bridge
100 Front Street, Suite 100
Conshohocken, PA  19428
Attn:   Jay Levin, Esq.                              Jay.Levin@flastergreenberg.com

**Via E-Mail and Regular Mail**
Flaster Greenberg PC
Attorneys for Plaintiffs
295 Madison Avenue, 12th Floor
New York, NY 10017
Attn:   Jennifer Katz, Esq.                          Jennifer.katz@flastergreenberg.com


**Via Regular Mail**
Anthony T. Rinaldi LLC d/b/a
The Rinaldi Group
1 Harmon Meadow Road
Secaucus, NJ  07094

**Via E-Mail and Regular Mail**
Pillinger Miller Tarallo, LLP
Attorneys for Anthony T. Rinaldi LLC d/b/a
The Rinaldi Group
555 Taxter Road, Fifth Floor
Elmsford, NY  10523
Attn:   Daniel O. Dietchweiler, Esq.                ddietchweiler@pmtlawfirm.com

13

**Via E-Mail and Regular Mail**
Wilson Elser Moskowitz Edelman & Dicker
Attorneys for Nobutaka Ashihara Architect, P.C.
1133 Westchester Avenue
White Plains, NY  10604
Attn:   Eric Cheng                               eric.cheng@wilsonelser.com

**Via E-Mail and Regular Mail**
Byrne O'Neil
Attorneys for Gene Kaufman Architect PC
26 Broadway
Third Floor
New York, NY  10004
Attn:   Elaine C. Gangel, Esq.                   eg@bonlaw.com

**Via E-Mail and Regular Mail**
Lewis Brisbois Bisgaard & Smith LLP
Attorneys for Frank Seta & Associates LLC
77 Water Street, 21st Floor
New York, NY 10005
Attn:   David Pollack, Esq.                      David.Pollack@lewisbrisbois.com
        Kevin Spagnoli, Esq.                     Kevin.Spagnoli@lewisbrisbois.com

**Via E-Mail and Regular Mail**
Morris Duffy Alonso and Faley
101 Greenwich Street
New York, NY  10006
Attn:   James Pannone, Esq.                      jpannone@mdafny.com