UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>
ATLANTIC CASUALTY INSURANCE<br>COMPANY,<br><br>                       Plaintiff,<br><br>                       v.<br><br>BAYPORT CONSTRUCTION CORPORATION,<br>LAM GROUP, and LAM PEARL STREET HOTEL<br>LLC,<br><br>                       Defendants.
</td><td>
25-CV-1163 (RA)<br><br>MEMORANDUM<br>OPINION AND ORDER
</td></tr>
</table>

RONNIE ABRAMS, United States District Judge:

This is an insurance-defense case. Plaintiff Atlantic Casualty Insurance Company ("Atlantic") brings this declaratory judgment action to determine its rights and obligations pursuant to an insurance policy issued to Defendant Bayport Construction Corporation ("Bayport"). Bayport is a subcontractor that performed allegedly defective stucco work on a construction project, for which it is being sued in an underlying action in state court. Atlantic is currently providing Bayport a courtesy interim defense in that action, but now seeks a declaration that the insurance policy it issued to Bayport does not provide coverage for the events at issue in the underlying action, and that it has no duty to defend or indemnify Bayport in that action.

Bayport now brings a motion to dismiss the instant action on the basis of the affirmative defenses of laches and equitable estoppel. For the reasons that follow—in particular, because these are fact-bound defenses not suitable for resolution on this motion to dismiss—the Court denies Bayport's motion.

## BACKGROUND

Plaintiff Atlantic Casualty Insurance Company issued an insurance policy (the "Policy") to Defendant Bayport Construction Corporation for the period of July 25, 2020 to July 25, 2021. Dkt. 36 ("Am. Compl.") ¶ 14.  Atlantic is currently defending Bayport in an underlying action in New York state court.  *Id.* ¶ 1; *see LAM Grp. v. Anthony T. Rinaldi LLC*, Index No. 650465/2022 (Sup. Ct. N.Y. Cnty.) (the "Underlying Action").

In the Underlying Action, Defendants LAM Group and LAM Pearl Street Hotel LLC (collectively, "LAM") sued Bayport (and other non-party entities) for breach of contract, negligence, breach of warranty, and breach of the implied warranty of good workmanship, alleging that Bayport, working as a subcontractor, performed defective masonry and stucco work in connection with the construction of a building located at 215 Pearl Street, in Manhattan (the "Building").  *Id.* ¶¶ 3, 17–18.  LAM allegedly discovered this defect when, on December 25, 2020, "pieces from the stucco exterior of the Building dislodged[,] causing property damage."  *Id.* ¶ 3. LAM then commenced the Underlying Action "[o]n or around January 31, 2022."  *Id.* ¶ 2.

Atlantic "received first notice of the 'occurrence,' claim and suit" "[o]n or around December 5, 2022."  *Id.* ¶ 19.  It issued a "partial disclaimer letter" on April 6, 2023, in which it "agreed to defend Bayport in the Underlying Action," subject to several coverage defenses.  *Id.* ¶ 20; *see id.* Ex. 4 ("April 6, 2023 Partial Disclaimer Letter").  In that letter, Atlantic stated that it "has determined that the plaintiff(s) in the lawsuit seek(s) damages that may not be covered under the policy."  April 6, 2023 Partial Disclaimer Letter, at 1.  It further stated that:

> As mentioned above, ACIC [(Atlantic Casualty Insurance Company)] will provide you with a courtesy interim legal defense to this action pending an ongoing investigation.  However, because ACIC's defense is a courtesy interim defense, you are entitled to counsel of your choosing and to reimbursement of the reasonable costs associated therewith should you chose [sic] to decline representation by the counsel ACIC has appointed for you.

*Id.* at 16.  On November 19, 2024, Atlantic sent Bayport a supplemental partial disclaimer letter in which it stated that "Coverage for the Action is entirely precluded" by the "EIFS Exclusion Endorsement" in the Policy, among other reasons.  Am. Compl., Ex. 5 ("November 19, 2024 Partial Disclaimer Letter").  In relevant part, that endorsement states that:

> This insurance does not apply to any claim, loss, costs or expense for . . . "property damage" . . . arising from the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an exterior insulation and finish system (commonly referred to as synthetic stucco or EIFS) or any part thereof.

*Id.* at 7 (the "EIFS Exclusion Endorsement").

In this action, Atlantic seeks a declaratory judgment that the policy it issued to Bayport "does not provide coverage for the Underlying Action," and that it has "no duty to defend or indemnify Bayport in the Underlying Action," under several different contract theories, including the theory that the EIFS Exclusion Endorsement precludes coverage.  Am. Compl. ¶ 5; *see id.* ¶¶ 25–49.  Atlantic also seeks a declaration that it "is entitled to recoup all the expenses" and "costs" it has incurred "in connection with its defense of . . . Bayport in the Underlying Action." *Id.* ¶¶ 50–53.  Bayport now moves to dismiss the Amended Complaint, Dkt. 39 ("Def. Br."); *see* Dkt. 39, Ex. 6 ("Def. Br.").  Atlantic filed an opposition, Dkt. 42 ("Pl. Opp'n"), to which Bayport replied.  Dkt. 44 ("Def. Repl.").

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts must therefore accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d

229, 237 (2d Cir. 2007).  At this stage, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

## DISCUSSION

Bayport seeks dismissal of this action on two narrow and related grounds:  that Atlantic's claims are barred by the doctrines of laches and equitable estoppel.  Def. Br. at 4.  The Court considers each in turn, and concludes that neither laches nor equitable estoppel applies to bar Atlantic's claims, at least at this point in the litigation.

### I.    Laches

Although the parties appear to agree that Atlantic has timely filed this declaratory judgment action, Bayport nevertheless argues that it should be barred by laches.  *See* Def. Repl. at 5–6. Laches is an equitable, affirmative defense "that bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*, 896 F.3d 174, 193 (2d Cir. 2018) (quoting *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998)); *see Gordon v. Amadeus IT Grp., S.A.*, 194 F. Supp. 3d 236, 250 (S.D.N.Y. 2016).  "As an equitable defense," laches "technically operates irrespective of a statute of limitations," *CSL Silicones Inc. v. Midsun Grp., Inc.*, 170 F. Supp. 3d 304, 316 (D. Conn. 2016), although if the applicable statute of limitations "has not expired, there is rarely an occasion to invoke the doctrine of laches and the burden remains on the defendant to prove all the elements of the defense." *Ikelionwu*, 150 F.3d at 238.

Moreover, "[l]aches is ordinarily not a proper defense at the pleading stage." *Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 573 F. Supp. 3d 671, 682 (D. Conn. 2021); *see, e.g.*, *George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014) (noting that laches is

"generally not available on a motion to dismiss"); *Gordon*, 194 F. Supp. 3d at 251 (same). That is because "a determination that a claim is barred by laches requires a factual inquiry into the reasons for plaintiff's delay and the extent and nature of the prejudice suffered by defendant as a result of that delay." *Deere & Co. v. MTD Prods., Inc.*, 2001 WL 435613, at *2 (S.D.N.Y. Apr. 30, 2001); *Hicks v. Leslie Feely Fine Art, LLC*, 2021 WL 982298, at *10 (S.D.N.Y. Mar. 16, 2021) (discussing the "fact-intensive" nature of this analysis).

A motion to dismiss on the basis of an affirmative defense, including laches, "may be granted *only* if the facts supporting dismissal are apparent on the face of the complaint, documents incorporated into or integral to the complaint, and matters of which the court may take judicial notice, including court records." *Reif v. Art Inst. of Chi.*, 2025 WL 763424, at *3 (2d Cir. Mar. 11, 2025) (summary order) (emphasis added); *see Conn. Gen. Life Ins. Co.*, 573 F. Supp. 3d at 682 ("Because such a factual inquiry is inappropriate on a motion to dismiss, a court's inquiry at this stage is limited to the face of the complaint."). At this juncture, therefore, laches may provide a basis for dismissal only if the Amended Complaint, and other materials properly before the Court, "show, as a matter of law, that . . . [Bayport was] prejudiced by" Atlantic's delay in bringing suit. *Hicks*, 2021 WL 982298, at *10; *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 195 (2d Cir. 2019) (similar).

Bayport's attempt to invoke laches fails, at least at this time. The crux of Bayport's argument is that it has suffered prejudice due to litigation decisions made by its counsel, provided by Atlantic, in the Underlying Action. In particular, Bayport takes issue with the decision by its defense counsel, in that action, to decline to retain an expert and produce an expert report in advance of a scheduled mediation session. Def. Br. at 5; *see* Def. Repl. at 5 ("Here, Bayport's prejudice is clear: it must proceed to mediation—a turning point in the underlying litigation—

without expert analysis of alleged façade defects . . . . Entering mediation blind is irreversible prejudice."). Bayport claims that this decision was made at Atlantic's direction. In its Reply, for example, Bayport claims that "Atlantic sat on its rights while controlling Bayport's defense," and states that Atlantic, rather than Bayport's counsel, "refused to retain an expert when it mattered at the beginning of the litigation." Def. Repl. at 9; *id.* at 8 ("[Atlantic] directed litigation strategy from the beginning, including instructing defense counsel not to retain an expert.").

The parties appear to dispute whether, or to what extent, Atlantic controlled Bayport's defense in the Underlying Action. As Atlantic points out, *see* Pl. Opp'n at 16, Bayport's counsel in the Underlying Action "has an attorney-client relationship only with the insured, and owes its entire allegiance only to the insured," regardless of the status of any pending declaratory judgment action about the scope of coverage under the Policy. *Schneider v. Canal Ins. Co.*, 1999 WL 689476, at *14 (E.D.N.Y. Sept. 1, 1999), *aff'd*, 210 F.3d 355 (2d Cir. 2000); *see Feliberty v. Damon*, 72 N.Y.2d 112, 120 (1988) ("[T]he paramount interest independent counsel represents is that of the insured, not the insurer"). Indeed, in the ordinary course, "[t]he insurer is precluded from interference with counsel's independent professional judgments in the conduct of the litigation on behalf of its client . . . [and is] prohibited from itself conducting the litigation or controlling the decisions of the insured's lawyer." *Feliberty*, 72 N.Y.2d at 120.

This laches defense thus rests on evidence not properly before the Court on a motion to dismiss. The wisdom of Bayport's counsel's defense strategy in the Underlying Action—and the degree to which Atlantic controlled Bayport's defense in the Underlying Action—is neither clearly apparent from the face of the Amended Complaint, which contains only a cursory summary of the Underlying Action, nor ascertainable from any judicially noticeable public documents from the Underlying Action. *See Reif*, 2025 WL 763424, at *3.

Moreover, it is not clear from Bayport's briefing why any alleged prejudice suffered from its counsel's decisions in the Underlying Action is connected to the timing of Atlantic's decision to file this declaratory judgment action. Prejudice "ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996). Bayport does not clearly explain how the timing of the instant action—which seeks to clarify the parties' rights and obligations under the Policy—would have affected any litigation decisions made in the Underlying Action.

Accordingly, it is too early to determine whether the affirmative defense of laches bars Atlantic's claims in this action.

## II.     Equitable Estoppel

Next, Bayport argues that Atlantic is equitably estopped from disclaiming coverage because it assumed control of Bayport's defense in the Underlying Action and unreasonably delayed in disclaiming coverage. Def. Br. at 4–5; Def. Repl. at 6–9.

"Failure to disclaim insurance coverage in a manner that is reasonably timely under the circumstances may result in waiver of the right to disclaim." *U.S. Underwriters Ins. Co. v. Landau*, 679 F. Supp. 2d 330, 341 (E.D.N.Y. 2010). "Under New York common law, an insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay." *Bluestein & Sander v. Chi. Ins. Co.*, 276 F.3d 119, 122 (2d Cir. 2002); *see, e.g.*, *RLI Ins. Co. v. AST Eng'g Corp.*, 2022 WL 107599, at *2 (2d Cir. 2022) (summary order) ("Under New York law, an insurer that delays disclaiming coverage is estopped from later denying coverage only if the insured suffers prejudice as a result of that delay."). "Prejudice to an insured may be presumed 'where an insurer, though in fact not obligated to

7

provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense.'" *Bluestein*, 276 F.3d at 122 (quoting *Albert J. Schiff Assocs. Inc. v. Flack*, 51 N.Y.2d 692, 699 (1980)).

"[T]he timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 407 (S.D.N.Y. 2015). "Whether a disclaimer is timely," though, "'almost always presents a factual question, requiring an assessment of all relevant circumstances surrounding a particular disclaimer,' and those 'cases in which the reasonableness of an insurer's delay may be decided as a matter of law are exceptions and present extreme circumstances.'" *Century Sur. Co. v. EM Windsor Constr. Inc.*, 2017 WL 5952706, at *9 (S.D.N.Y. Nov. 29, 2017) (quoting *Cont'l Cas. Co. v. Stradford*, 11 N.Y.3d 443, 449 (2008)); *see U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004).

"An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay." *Netherlands Ins. Co. v. United Specialty Ins. Co.*, 276 F. Supp. 3d 94, 106 (S.D.N.Y. 2017). The New York Court of Appeals has made clear that there is no "fixed yardstick against which to measure the reasonableness, or unreasonableness, of an insurer's delay." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 70 (2003). "An insurer can satisfy this burden by proving, for example, that the delay was reasonably related to the completion of a necessary, thorough, and diligent investigation by the insurer into issues that would affect the decision on whether to disclaim." *Netherlands Ins. Co.*, 276 F. Supp. 3d at 106; *see City Club Hotel*, 369 F.3d at 107 ("[W]here the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to

8

disclaim coverage, but the insurer also has an obligation to engage in a reasonably prompt, thorough, and diligent investigation of the claim."). "Although not uniform, the case law applying this standard reflects that, in general, disclaimers made within 30 days of notice are treated as timely, whereas disclaimers beyond the 30-day point are generally treated as untimely." *Century Sur. Co.*, 2017 WL 5952706, at *9; *see also City Club Hotel*, 369 F.3d at 107 ("New York courts have concluded that an unexcused delay of 48 days or longer is unreasonable as a matter of law.").

As alleged in the Amended Complaint, Atlantic received "first notice of the 'occurrence,' claim and suit" "[o]n or around December 5, 2022," which Atlantic claims is "almost two years after [the occurrence] transpired." Am. Compl. ¶¶ 19, 37. It issued its first partial disclaimer letter "[o]n April 6, 2023," approximately four months later. *Id.* ¶ 20. It then issued a supplemental partial disclaimer letter on November 19, 2024. *Id.* ¶ 21.

Atlantic does not provide an explanation for this delay in disclaiming coverage in its opposition to Bayport's motion to dismiss or in its Amended Complaint. Nevertheless, because the determination of the reasonableness of Atlantic's delay in disclaiming coverage raises a "question of fact, dependent on all of the circumstances of a case that make it reasonable, or unreasonable, for an insurer to investigate coverage," the Court finds that it is premature to decide the issue as a matter of law on a motion to dismiss, rather than at summary judgment or at trial. *First Fin. Ins. Co.*, 1 N.Y.3d at 70; *see, e.g.*, *Travelers Indem. Co. v. Northrop Grumman Corp.*, 413 F. Supp. 3d 263, 282 (S.D.N.Y. 2019) (noting that the case presented "exceptional circumstances where the timeliness of [the insurance company's] disclaimer can be decided," as a matter of law, "on summary judgment"); *City Club Hotel*, 369 F.3d at 107 ("[I]n the exceptional case[,] this question may be decided without the benefit of a jury."). Furthermore, as previously discussed, the degree of prejudice suffered by Bayport in the Underlying Action, if any, as well as

the degree to which Atlantic controlled Bayport's defense in that action, are fact-bound questions not suitable for resolution on a motion to dismiss.

## CONCLUSION

For these reasons, Bayport's motion to dismiss is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 39.

SO ORDERED.

Dated:    June 5, 2026
          New York, New York

Ronnie Abrams
United States District Judge